Charles **LINDNER**, Appellant,

v.

James B. **KILSHEIMER** III, as Trustee in Bankruptcy of Jacob Eichel, Appellee.

No. 353, Docket 26801.

United States Court of Appeals Second Circuit.

Argued April 14, 1961.

Decided May 3, 1961.

Rehearing Denied May 22, 1961.

Francis Finkelhor, New York City, for appellant.

James B. Kilsheimer, III, New York City (Leo Kaplan, New York City, on the brief), for appellee.

Before MEDINA, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Jacob Eichel, a lawyer, was adjudicated an involuntary bankrupt on December 15, 1959. Schedule A–3, annexed to his statement of affairs, filed in March, 1960, showed Charles Lindner, the appellant, as an unsecured creditor for $17,400. Two months earlier Lindner had filed a claim alleging the bankrupt was indebted to him for $62,232. Of this total $20,-000 was represented by a note dated July 1, 1957, which was annexed, and the balance consisted of guarantees of two mort-

gages, of $14,000 each, by Li-Bet Realty Company and one in the amount of $14,-232, by Jawar Realty Corp., also attached. The claim averred that no part of the sum due had been paid save for a $2,500 payment on the $20,000 loan [1] and that no security was held "except as stated above."

On April 8, 1960, the bankrupt, who was a cousin of Lindner, died. In June appellant moved for leave to amend his proof of claim. The proposed amended claim, also for $62,232, differed from its predecessor in alleging that the consideration was "Loans made to the bankrupt at various times during 1954, 1955, 1956, 1957 and 1958," in omitting the statement as to the repayment of $2,500, and in asserting the holding of shares in nine different corporations as collateral; appellant by his motion asked leave to sell these. The Trustee, in answer, sought to examine, under § 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, how Lindner had come into possession of the securities. Lindner's motion came on for hearing before Referee Loewenthal on July 21, 1960. His attorney having stated that Lindner was too ill to be interrogated, the Referee designated a physician to make a physical examination of Lindner at home. Lindner refused to permit this. The Referee then denied the motion for leave to amend and for permission to sell. Meanwhile the amended claim had been filed, without leave.[2]

Later the Trustee obtained an order to question Lindner under § 21, sub. a. A subpoena *duces tecum* issued but the process server, being denied access to appellant's home, was unable to effect service. The Trustee then moved to expunge the claim; Lindner filed an answer, alleging he was now ready to submit to physical examination, endeavoring to explain his prior refusal on the basis of his then inability even to be medically examined and the absence of his counsel at the

[1]. The claim appears to have been self-contradictory in this respect, since $62,232 is the sum of $20,000 plus the three mortgages.

[2]. Apparently none was needed, since the amended claim was filed within the period for filing claims provided by § 57, sub. n, 3 Collier, Bankruptcy (14th ed.), pp. 164–165.

time, and again asking leave to sell the securities. Attached to the answer were photostats of three letters from Eichel to Lindner, dated Jan. 16, Mar. 4, and May 9, 1957, reciting the delivery of stock certificates "as security for any and all loans made by you at any time to me or to any of my clients, in which case, I guarantee each and every loan made by you," and a photostat of a further letter dated Oct. 21, 1958, signed in Eichel's name by an office associate, confirming that the $20,000 loan made on July 1, 1957, was still outstanding.

Hearing on the motion to expunge was held on November 15, 1960. Lindner did not appear and no evidence was offered to support the claim, although testimony disclosed he had been at his business office on the previous day. Counsel for the Trustee offered to put the matter over for a few days pending Lindner's personal appearance or an examination by the court-appointed physician if Lindner would pay the latter's fee; desultory discussion as to the cost of this ensued. The Trustee placed in evidence a handwritten note from Lindner to the bankrupt, dated December 9, 1957, stating: "Am returning checks and note for the sum of $19,000. Balance of $1,000 I have credited against the $15,000 due me from loan made September 20, 1957" and also two checks from the bankrupt to Lindner, dated November 8 and November 12, 1957, in the respective amounts of $5,000 and $10,000. Counsel for the Trustee then moved that the claim be expunged "unless Mr. Lindner can be produced." Appellant's counsel sought leave to obtain an affidavit from Lindner's personal physician; the Referee denied this request, indicating he would not believe such an affidavit if tendered. There was more discussion, but no offer by appellant's counsel either to produce him or to pay the fee of the court-appointed physician for an examination. The Referee then instructed the Trustee to "Submit an order expunging his claim in view of his failure to be examined by Court appointed physician, and his failure to come in here and prove his claim this day." Such an order was entered; a petition to review was denied by the District Court.

There is nothing to appellant's argument that a referee may never visit any consequences upon a claimant who refuses to appear for examination under § § 21, sub. a save to certify him to the judge for contempt under § 41 of the Bankruptcy Act, 11 U.S.C.A. § 69. As in the case of F.R.Civ.Proc. 37(b), 28 U.S. C.A., although contempt proceedings are available as a remedy for disobedience to an order for examination, this does not mean they are the only remedy.

The more serious question is whether the Referee was warranted in disallowing the claim on the facts. Collier tells us, 3 Bankruptcy (14th ed.) 235, that "Since the fair opportunity to be given the objecting party involves the right to examine the claimant in an attempt to elicit from him any relevant matter tending to disprove the sworn proof of claim, it might be felt that the claimant's failure to present himself should have effects similar to those of a plaintiff in default, thus destroying all probative value of the proof of claim"; but that "The scant authority available on the question would not seem to justify a disallowance for mere failure of the creditor to appear for examination, and the better policy is to leave the bankruptcy court with sufficient freedom to weigh the equities and to draw the inferences justified by the circumstances of the particular case." Although the hearing before the Referee was scarcely a model of clarity, even allowing for the absence not merely of the prince but of the king as well, we cannot say the Referee's action exceeded the wide powers accorded him in such matters. Maners v. Ahlfeldt, 8 Cir., 1932, 59 F.2d 938; 3 Collier, Bankruptcy (14th ed.), pp. 236–238. Here there was not only Lindner's failure to testify in support of his claim —there were also his disobedience of the order for physical examination; his evasion of the subpoena *duces tecum;* his relationship with the bankrupt; the self-contradiction in his original claim; the

discrepancy between that and the amended claim filed after the bankrupt's death; the vagueness of the statements of consideration in the amended claim; and the Trustee's evidence as to payment which, though inconclusive, at least called for explanation. The combination was enough even though no single element may have been. Moreover, although the record is anything but clear, we read the order as merely disallowing so much of Lindner's claim as is unsecured, not as passing on the validity of his claim to the collateral, 3 Collier, Bankruptcy (14th ed.), pp. 150–154, 193–194, or as precluding another and better supported application for leave to sell; we would have more difficulty in approving it if it did.

Affirmed.