In the Matter of Dallas Cabana, Inc.,
Bankrupt.

DALLAS CABANA, INC., et al.,
Appellants,

v.

Wilson F. COLLIER, Trustee, Appellee.

No. 72–1273.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1972.

Rehearing and Rehearing En Banc
Denied Dec. 29, 1972.

William VanDercreek, Paul H. Stanford, Anthony Atwell, Dallas, Tex., James Choate, Grapevine, Tex., for appellants.

Philip I. Palmer, Jr., Jay Ungerman, William J. Rochelle, Jr., Dallas, Tex., for appellee.

Before GEWIN, THORNBERRY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an appeal from the final order of the district court affirming the Findings and Conclusions of the Referee in Bankruptcy in regard to proceedings involving Dallas Cabana, Inc. The proceedings were factually complex and hotly, indeed vituperatively, disputed. A lengthy and detailed opinion could serve no precedential purpose to the public and the underlying facts are too well known to the litigants to be of benefit to them. We have therefore distilled our opinion to its legal essence.

■ The premier issue in this case— to which the other points assume secondary importance—is whether the equitable title to certain hotel property in Dallas, Texas, was vested in the bankrupt at the time of adjudication. The trustee made the issue through his institution of a quiet title proceeding in which he readily met his burden of proof by showing legal title to be in Dallas Cabana, Inc., the bankrupt. However, proof of legal title was not sufficient to finally dispose of the question in the case at bar because under Texas law the trustee possessing the powers of a judgment creditor (but not a bona fide purchaser for value) under Section 70c of the Bankruptcy Act [1] cannot prevail over

1. 11 U.S.C.A. § 110(c) (Supp.1972).

an unrecorded equitable interest in real estate.[2] While Appellant Rosenthal necessarily conceded that the bankrupt held the legal title, he affirmatively contended that such title was held in trust for a partnership or joint venture and that equitable title was vested in the individual partners or joint venturers; thus, the property was improperly included in the bankrupt's estate.

■ To prevail on his contention, Rosenthal was required to show that, first, the partnership or joint venture existed at the time the bankrupt corporation took legal title and, second, the bankrupt acquired its legal title with an equitable charge to hold the same for the benefit of the partnership or joint venture. The referee made no finding as to the first point. However, as to the second *sine qua non*, the referee's findings demonstrate that Rosenthal did not carry his burden of showing that the alleged partnership or joint venture held any equitable interest in the hotel property. The referee found that "the investors were not certain what type of equity interest they had in the hotel" and that no limited partnership agreement was ever prepared. The stock of Dallas Cabana, Inc., which held legal title to the property, was held by three people who "do not know and have never known precisely for whom they are holding the shares of stock that stand in their names." The entities which made substantial extensions of credit to Dallas Cabana, Inc., were unaware of any sort of partnership or joint venture arrangement. Even were we to assume the existence of the partnership, it does not follow that that entity held equitable title to the property itself, rather than merely holding some nebulous equity in the title to the stock in Dallas Cabana, Inc. Rosenthal failed to establish that any partnership or joint venture held any equitable interest in the hotel property.[3]

■ Rosenthal contends that counsel for the Melcher interests were improperly retained by the trustee for the purpose of litigating the issue as to the trustee's title to the hotel property. This, it is urged, created such a conflict of interest in the administration of the estate that the trustee should have been removed and his orders vacated. The conflict of interest is alleged only in general terms, and Rosenthal's briefs do not reveal any actual conflict of interest between the trustee and the Melcher interests as to the title question. Indeed, it appears that the interests of both perfectly coincide as to this facet of the proceedings—the Melcher interests as well as the trustee desired to retain the hotel property as part of the bankrupt estate. General counsel to the trustee, whose status and qualifications are not attacked, also advised him that the title contentions of the Melcher interests were apparently correct in fact and law and that the employment of the Melcher attorneys would be in the best interests of the general creditors. The objective of employing the Melcher counsel was to save time and expense by acquiring the benefit of the already existing familiari-

2. *See, e. g.,* Hammett v. McIntire, 365 S.W.2d 844 (Tex.Civ.App.1962), error refused; Roeser & Pendleton v. Stanolind Oil & Gas Co., 138 S.W.2d 250 (Tex. Civ.App.1940), error refused; South Texas Lumber Co. v. Nicoletti, 54 S.W.2d 893 (Tex.Civ.App.1932), error dismissed; Del Rio Bank & Trust Co. v. Cornell, 57 F.2d 142 (5th Cir. 1932).

3. Rosenthal bases much of his case on the existence of partnership tax returns which reflected claimed deductions for partnership losses by his true rival in these proceedings who is not the trustee, but the so-called Melcher interests. These tax returns were prepared by Rosenthal while he was attorney and financial manager for the Melcher Interests, attorney and financial manager for Dallas Cabana, Inc., and a director of Dallas Cabana, Inc. In a post-argument brief Rosenthal points out that the Melcher interests have claimed a partnership existed as to prior similar hotel ventures. While the returns and prior similar business undertakings provide some support for Rosenthal's contention, neither separately nor together would they have compelled the referee to reach an opposite resolution of the disputed title issue.

ty of these counsel with the factual situation pertinent to the title issue. The referee did not err in approving the trustee's action in employing counsel for the Melcher interests for this purpose.

 Rosenthal next urges that the referee erred in adjudicating Dallas Cabana, Inc. (which had voluntarily entered the bankruptcy forum seeking a corporate reorganization under Chapter XI) a bankrupt without giving the notice and hearing required by Section 376 of the Bankruptcy Act.[4] The evidence shows that the notice of the First Meeting of Creditors in the Chapter XI Reorganization proceedings contained a notice that the court could at that first meeting, or at any continuation thereof, adjudicate bankruptcy or dismiss should the Arrangement fail.[5] The referee entered an order of adjudication at a continuation of that meeting after determining that an Arrangement which would salvage the corporation was impossible and that bankruptcy was in the best interests of the creditors. Appellant has failed to show significant prejudice resulting from the allegedly defective notice which warrants reversal by this court. There is no serious contention that Dallas Cabana, Inc. should not have been adjudicated a bankrupt. If there was some actual prejudice to Rosenthal from the allegedly defective notice, the appropriate remedy at this time is most certainly not to invalidate the adjudication *post hoc*. The factual issues which Rosenthal asserts he would have interposed in the hearing on the adjudication have now been resolved against him in proceedings of which he was duly notified and in which he fully participated. It would be pointless to now reverse the referee's adjudication on this technicality.

Since the issues discussed above are resolved in favor of the Trustee, we reject the appellants' contention that the referee's confirmation of the sale of the property should be set aside.

 For the same reasons given with regard to the title claim representation—time and expense savings—special counsel was also employed to contest the creditor claims of the Rosenthal interests. The trustee, after receiving the advice of his independent general counsel that the claims for legal and financial services were unsupported, determined that litigation of this detailed and complicated matter could best be conducted by those already familiar with the nature of the business operations of the bankrupt. While acknowledging the general rule to be that counsel for the bankrupt should not be chosen to act as counsel for the trustee, under the facts of this case we find no such conflict of interest between the Melcher interests and the trustee as to the status of these Rosenthal interest claims as would require that we reverse the decision of the referee approving this representation.

 The Rosenthal interests also attack the referee's action in disallowing their claims for various legal, financial, and management services which, allegedly, they rendered to the bankrupt and for which they were not compensated. In denying these claims the referee found that "the claimants' records were so unreliable and untrustworthy and had been so badly impeached that they could not serve as a basis for allowance for any parts of the claims." There is more than ample evidence in the record to support this finding.

 Nor do we find error by the referee in terminating the hearing on

4. 11 U.S.C.A. § 776 (1970).

5. Two Chapter XI petitions were filed by attorneys purporting to represent Dallas Cabana, Inc.; the first to be filed was the one prepared by attorneys representing Rosenthal, and the second was by counsel representing the Melcher interests. The two petitions were consolidated for procedural purposes, but the issue of which petition would finally govern was never resolved. The Melcher interests consented to the bankruptcy adjudication, but Rosenthal did not. However, Rosenthal never moved to dismiss or withdraw the Chapter XI petition which he procured.

the claims presented by Rosenthal and his associates. The referee found that Rosenthal was not acting in good faith during the hearings on the validity of claims, but was intentionally delaying this part of the action. His techniques for obstructing the progress of these proceedings included failure to appear at hearings, frequent and unmeritorious excuses for walking out of depositions, refusals to answer interrogatories, repeated dilatory pre-trial motions and requests for continuances, and obstinate conduct while on the witness stand. While a litigant cannot be denied a hearing merely because he is in contempt, *see* Hovey v. Elliot, 167 U.S. 409, 17 S. Ct. 841, 42 L.Ed. 215 (1897); Deauville Associates, Inc. v. Eristavi-Tchitcherine, 173 F.2d 745 (5th Cir. 1949), he is not entitled to continue to obstruct and delay the business of the court after fair and clear warning. Rosenthal was given a full and fair opportunity to be heard; he cannot now complain of the termination of his day in court because of his arbitrary refusal to participate, which had as its only apparent purpose the forestalling of a just determination of the issues on their merits. Rosenthal is therefore deemed to have waived his right to now present additional evidence. *See* Lindner v. Kilsheimer, 289 F.2d 340 (2d Cir. 1961).

The judgment of the court below is in all respects

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.