### In re NORTH JERSEY TRADING CORPORATION, Debtor.

No. 93–31620.

United States Bankruptcy Court,
D. New Jersey.

Feb. 1, 1995.

---

Bruce H. Levitt, Mudge, Rose, Guthrie, Alexander & Ferdon, Parsippany, NJ, for debtor.

Karen E. Bezner, Trustee, Scotch Plains, NJ.

Richard A. Epstein, Edison, NJ, for Sara and Joseph Nathanson.

Lenore S. Davis, Cedarhurst, NY, for Binah Kamilar.

Steven Delibert, New York City, for Susan Charney.

Robert Herskowitz, Miami Beach, FL, pro se.

Judith Herskowitz, Miami Beach, FL, pro se.

## MEMORANDUM OPINION ON CONTEMPT OF COURT BY JUDITH HERSKOWITZ AND ORDER OF CONTEMPT

STEPHEN A. STRIPP, Bankruptcy Judge.

This shall constitute the court's *sua sponte* opinion on contempt of court committed by Judith Herskowitz in the presence of the undersigned. This court has had to remove Ms. Herskowitz from the courtroom on three occasions, due to her disruptive behavior and refusal to abide by instructions of the court. In addition, she had been disruptive on one earlier occasion as well. At the most recent hearing on January 17, 1995, the court in removing Ms. Herskowitz ordered that she will not be permitted to appear personally in the courtroom again until further order. Although the court did not use the word "contempt" in removing Ms. Herskowitz on these occasions, her behavior was plainly contumacious, as she was removed because of her refusal to abide by the court's orders that she cease her disruptive behavior. This opinion sets forth in writing the court's finding that Ms. Herskowitz was in contempt of court on the subject occasions when she was removed. An accompanying order reflects this court's *sua sponte* ruling that because of Ms. Herskowitz's behavior, she shall not be permitted to appear personally in the courtroom until further order. The subject order further provides, however, that to protect Ms. Herskowitz's right to due process, she shall be permitted to appear telephonically and to continue to make written submissions. In addition, Ms. Herskowitz could of course appear by counsel should she employ same.

This court has jurisdiction under 28 U.S.C. §§ 1334, 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2). The following shall constitute the court's finding of fact and conclusions of law.

### FINDINGS OF FACT

#### I.

Ms. Herskowitz is a shareholder of the debtor North Jersey Trading Co. Her sons Robert and Mark are also shareholders. The Herskowitzes own 60% of the shares of the debtor's stock and control the board of

directors. The debtor owned an apartment building in New York City. The building was encumbered by mortgages which were in foreclosure when this bankruptcy case was commenced.

Susan Charney, Ms. Herskowitz's sister, has been determined by a final judgment of the New York state court to own 40% of the shares of the debtor's stock. Notwithstanding this judgment, however, Ms. Herskowitz continues to insist that Ms. Charney is not a stockholder of debtor, and that the inter vivos gifts of stock from their father to Ms. Charney were forged. Ms. Charney has also obtained a derivative judgment in New York state court on behalf of the debtor against Ms. Herskowitz and her sons for $4,300,000. Although that judgment is also final, Ms. Herskowitz insists that it is not valid either, and she has apparently instituted a collateral attack on that judgment in the state courts of Florida, where she resides.

Because of the shareholder dispute, the derivative judgment and evidence that the Herskowitzes had mismanaged the debtor's real property when they controlled it, this court directed the appointment of a chapter 11 trustee, and Karen E. Bezner, Esq. was appointed. The debtor was given the opportunity to propose a plan of reorganization, and did so, but the plan was not feasible. The court directed the trustee to sell the property, and she did so, over the debtor's and the Herskowitzes' objections, at a public sale conducted in this court.

## II.

Throughout the proceedings Ms. Herskowitz, who is apparently a law school graduate and is representing herself as a shareholder in this case, has repeatedly been disruptive in the courtroom, elsewhere in the courthouse and in surrounding areas.[1]

At a hearing on April 11, 1994 on the trustee's motion for sale, Ms. Herskowitz repeatedly interrupted the court and other parties, and refused most of the court's directions that she remain quiet until given permission to speak.

At a further hearing on May 11, 1994 on the motion for sale, Ms. Herskowitz threatened the trustee outside of the courtroom and was warned by the court that neither that conduct nor any repetition of her conduct in the courtroom on April 11th would be tolerated.

Ms. Herskowitz's first involuntary removal from the courtroom occurred at a further hearing on August 3, 1994 regarding the sale and other matters. The court provided Ms. Herskowitz with three warnings that she would be removed if she did not abide by the court's instructions as to the length of time for her arguments, and to refrain from interrupting the court and other parties with her comments. Nonetheless, Ms. Herskowitz continued to argue after the court instructed her to stop, refused to listen to the court, and engaged in loud outbursts. As a result, Ms. Herskowitz was eventually directed to leave the courtroom, a direction with which she eventually complied. After her removal, however, Ms. Herskowitz continued her misbehavior outside the courtroom.[2]

The second involuntary removal occurred on August 31, 1994 at the scheduled sale of the debtor's real property. Unlike Ms. Herskowitz's first removal, however, this second

---

1. Ms. Herskowitz has a similar track record in other courts as well. She has been held in contempt of New York's courts no less than four times. See Reply Affirmation in Support of Motion for Additional Relief From Automatic Stay and For leave to Institute Turnover Proceeding; and in Opposition to Cross Motion for Sanctions, In re North Jersey Trading Corp., 93–31620 (Bankr.D.N.J. June 10, 1994), Document No. 201, at 5. Moreover, the U.S. Court of Appeals for the Second Circuit cited Ms. Herskowitz for contempt in December 1993, and fined her $2,500. This fine was paid only after "the Second Circuit issued a Writ of Body Execution and the United States Marshals besieged Judith Her-

skowitz in the Manhattan apartment of Robert Herskowitz." Id.

2. During the lunch recess, Ms. Herskowitz resumed her obstreperous behavior. An investor had attended the hearing, in anticipation of the property sale. Apparently seeking to discourage this investor's participation in the sale, Ms. Herskowitz began badgering him, threatening to institute litigation against him should he attempt to bid at the sale. This badgering and harassment continued as Ms. Herskowitz followed the investor into a local restaurant. Ms. Herskowitz continued her abuse until the restaurant owner told her to leave the premises.

removal required the assistance of court security officers. As the sale was about to begin, Ms. Herskowitz began a reiteration of arguments which the court had previously rejected in opposition to the sale. Refusing to heed the court's admonitions, Ms. Herskowitz persisted in presenting her opposition. Finally, Ms. Herskowitz sat down, but she began to weep and mutter audibly, and would not listen to the court's warnings that she stop. Because her muttering was interfering with the proceedings, the court ordered her to leave the courtroom. Ms. Herskowitz refused to leave, until a court security officer led her by her arm out of the courtroom.[3]

Finally, Ms. Herskowitz again had to be removed from the courtroom by court security officers on January 17, 1995. Once again the cause for her removal was her failure to heed the court's admonitions to speak in turn and to cease making outbursts. The U.S. Marshal's office thereafter prepared another incident report in response to Ms. Herskowitz's egregious misbehavior after her removal.[4]

This final incident resulted in a bench order on January 17th that Ms. Herskowitz would not be permitted back in the courtroom until further order.

### CONCLUSIONS OF LAW

#### I.

■ Fed.R.Bankr.P. 9020(a) provides that contempt committed in the presence of a bankruptcy judge may be determined summarily by such judge. Willful obstruction of the administration of justice in the presence of the court is the type of conduct governed by Rule 9020(a). 9 *Collier on Bankruptcy* ¶ 9020.01[1], at 9020–2 (15th ed. 1994). The traditional distinction between civil and criminal contempt proceedings is not applicable in such situations. *International Union, United Mine Workers v. Bagwell,* —— U.S. ——, —— n. 2, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 n. 2 (1994). As Rule 9020 recognizes, the bankruptcy court has the power to enter contempt orders. *See In re Ragar,* 3 F.3d 1174 (8th Cir.1993); *In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) and cases cited therein.

■ The Supreme Court has held that even in a criminal case, where a defendant's liberty is at stake, a defendant can lose his right to be present at trial if he persists in disrupting the trial:

> [W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

> \*   \*   \*   \*   \*   \*

---

3. Ms. Herskowitz's post-removal behavior was reported in a U.S. Department of Justice/United States Marshals Service "Report of Investigation." The reporting officer explained that after Ms. Herskowitz had been removed from the courtroom, she

> became disorderly and abusive in the second floor hallway, and attempted to re-enter Judge Stripp's courtroom. [She was] then ... advised that she would have to leave the courthouse due to her disorderly conduct. As the [officers] accompanied her towards the second floor elevators, [she] refused to leave, and entered the second floor ladies bathroom. [When the officers were] assured that Herskowitz was the only lady in the bathroom, [the officers] removed her from the bathroom, and escorted her out of the courthouse.

The report concludes by explaining that Ms. Herskowitz was advised to stay out of the building, in light of the disturbance she was causing. She nevertheless persisted in attempting to gain access thereafter, but was refused entry.

Employees of the court clerk's office have also reported that before Ms. Herskowitz went into the bathroom, she ran from the officers into the clerk's office file room, an area which is not open to the public.

4. The report states that Ms. Herskowitz also caused a disturbance outside the courtroom, and as a result, was removed from the building. Nonetheless, Ms. Herskowitz later attempted to reenter the building and was denied access. The report states that if Ms. Herskowitz causes another disturbance, she will be cited for violating "Rules and Regulations Governing Public Buildings and Grounds," which is part of the Code of Federal Regulations (C.F.R.). The report ends with the comment: "This person has been a constant and ongoing problem."

The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1601, 25 L.Ed.2d 353 (1970). *See also United States v. Martin–Trigona,* 759 F.2d 1017 (2nd Cir.1985); *Dallas Cabana, Inc. v. Collier,* 469 F.2d 606 (5th Cir.1972), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973); *Botany v. Heeringa,* 521 F.Supp. 1369 (E.D.Wis.1981), *Aff'd* 723 F.2d 66 (1983).

## II.

■ Ms. Herskowitz's behavior in this court as described above has interfered with the administration of justice in this case. Her behavior on the three occasions when she was removed from the courtroom was in contempt of the court's bench orders that she was to cease interrupting rulings and that she was to present her arguments within the limits prescribed by the court. Although the court did not use the word "contempt" on those occasions, the import of ordering Ms. Herskowitz to be removed from the courtroom for refusing to obey the court is clear. The court hereby clarifies its findings and conclusions on those occasions that the subject behavior was contumacious.

## III.

As previously noted, the court rendered a bench ruling on January 17, 1995 that Ms. Herskowitz would be barred from the courtroom until further order. The Supreme Court held in *Illinois v. Allen* that

Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Allen,* 397 U.S. at 343, 90 S.Ct. at 1061.

In this case, Ms. Herskowitz promised on the prior occasions to behave after the court threatened her with removal. She then, however, promptly broke that promise and had to be removed. This court does not believe that the Supreme Court intended the quoted statement in *Illinois v. Allen* to mean that a party shall have an indefinite number of such promises and removals. Indeed, the Supreme Court also stated that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."

*Illinois v. Allen* suggests as one alternative that a criminal defendant can as a last resort be bound and gagged, and thereby kept present in the courtroom. While that is a tempting suggestion in Ms. Herskowitz's case, the court is certain that binding and gagging would rarely if ever be appropriate in civil cases.

Another alternative is to permit her to appear by telephone. This will enable her to participate in oral argument. It will also, however, enable the court to control her participation without the disruption attendant upon her removal from the courtroom. In this manner Ms. Herskowitz's right to due process is preserved. She will of course continue to be permitted to make written submissions, and she could always employ counsel to appear if she chose. The court concludes that this is the appropriate balance in this case between the need to preserve order in the courtroom and Ms. Herskowitz's right to due process.

In light of Ms. Herskowitz's repeated defiance of the court security officers after her removal and her attempts to force her way back into the courtroom, and the resulting disturbances in the hallways, Ms. Herskowitz is enjoined from appearing in this courthouse at all for any further proceedings in this court in this case. Her personal appearance for purposes of any appeals to the district court or the circuit court is a matter within the discretion of those courts.

### ORDER OF CONTEMPT

For the foregoing reasons, the court hereby orders and adjudges as follows pursuant to Fed.R.Bankr.P. 9020(a):

1. Judith Herskowitz committed contempt in the presence of this court on August 3, 1994, August 31, 1994 and January 17, 1995. On all of those occasions Ms. Herskowitz was ordered to be removed from the courtroom because her behavior materially interfered with the conduct of proceedings in this case.

2. On January 17, 1995 Ms. Herskowitz was enjoined as a result of such conduct from appearing personally in this court until further order. That injunction shall continue.

3. Ms. Herskowitz shall be permitted to appear telephonically, at her expense, if she wishes to do so.

4. Ms. Herskowitz shall not be permitted to remain anywhere in the courthouse in connection with any hearings in this court in this case. Her personal appearance for purposes of any appeals to the district court or the court of appeals are within the discretion of those courts. Therefore, the United States Marshal shall not permit Ms. Herskowitz access to this courthouse unless she represents that she wishes to go to facilities of the district or circuit courts in connection with any appeals. In that event she shall be escorted by the Marshal to those courts.