COPELAND *v.* CHENEY *et al.*

1. Upon general demurrer it will be determined whether the averments of an equitable petition are such as to authorize the relief called for by the prayers of the same.

2. Even though an equitable petition may contain allegations which would authorize relief of a given nature, yet if there be no specific prayer asking for this relief and no prayer for general relief, the petition will be dismissed on general demurrer when the allegations thereof do not authorize the relief prayed for therein.

3. Applying the rules above laid down to the petition in the present case, the court did not err in sustaining a general demurrer to the petition.

Argued November 13, — Decided December 11, 1902.

Equitable petition. Before Judge Henry. Floyd superior court, April 4, 1902.

*Harris, Chamlee & Harris,* for plaintiff.
*M. B. Eubanks,* for defendants.

COBB, J. Mrs. Copeland brought an equitable petition against Mrs. Cheney and Jim Murkerson. The petition alleged, in substance, as follows: Plaintiff had borrowed from Mrs. Cheney the sum of $130, had given her three notes at sixty dollars each, with interest at six per cent. per annum, and, to secure the payment of the same, had executed and delivered a deed to a described parcel of land. Suit had been brought upon the three notes, and judgment had been rendered for the full amount of the principal, interest, and costs. Executions had been issued and levied upon the land, and the same had been sold by the sheriff, and Mrs. Cheney had become the purchaser for the sum of $180. Between the time the land was advertised and the date of the sale the plaintiff had entered into an agreement to sell the land to Murkerson for the sum of $500, to be paid in annual installments of $100 each, with interest at 8%, Murkerson, as additional security for the purchase-money, to give a mortgage upon other land owned by him and on certain personal property. This agreement between the plaintiff and Murkerson was communicated to Mrs. Cheney, and it was agreed between plaintiff and Mrs. Cheney that the land should not be sold at the time and place advertised and that the extension of the time of payment of the executions would be given and the sale to Murkerson consummated. The notes and mortgage given by Murker-

son were to be turned over to Mrs. Cheney as additional security on her debt; Mrs. Cheney agreeing that if plaintiff would allow a reasonable discount on the notes, the executions would be marked " satisfied," and plaintiff be paid the difference between the amount of the executions and the amount of Murkerson's notes, less the discount. Relying upon this agreement, plaintiff did not attend the sheriff's sale. Mrs. Cheney, disregarding the terms of her agreement, ordered the sale to proceed, and became the purchaser of the property for the sum above mentioned. Immediately after the sale Mrs. Cheney sold the land to Murkerson upon the same terms and conditions that had been agreed upon between plaintiff and Murkerson. It is alleged that Mrs. Cheney refuses to carry out her agreement to pay the plaintiff the difference between the amount of the executions and Murkerson's notes, less reasonable discount, such reasonable discount being alleged to be 8%. It is averred that Mrs. Cheney refuses to accept in cash the amount of Mrs. Copeland's debt and surrender Murkerson's notes, or to surrender plaintiff's land to her upon such payment. It is alleged that the conduct of Mrs. Cheney in forcing the land to sale after the agreement that the sale should be postponed operates as a fraud upon the plaintiff; that the sale actually took place after the crowd had dispersed; that there were no bidders present, only one bid being made, that of Mrs. Cheney for the amount above stated, which is less than half the market value of the land. It is alleged that the profits of the land are of the yearly value of $75, and that defendants have received this sum for the years 1900 and 1901; that the liens against plaintiff's property are tainted with usury, in that plaintiff received only $130 and the notes given by plaintiff were for $180, with interest on said sum from date at the rate of 8% per annum; that plaintiff's total indebtedness to Mrs. Cheney is only $130 principal and $23.70 interest, making a total of $153.70. At the time the land was sold at sheriff's sale both the defendants knew that it was worth $500, and knew that plaintiff was relying upon the agreement made with Mrs. Cheney that the sale would be postponed, and they both knew that plaintiff had arranged to get the money to pay off the executions, and knew from whom the money was to be had. The prayers of the petition are, that plaintiff " be now permitted to pay off her said indebtedness of one hundred and thirty dollars, with interest at the rate fixed

by law, to said Mrs. A. H. Cheney, and that the said deed to said Mrs. A. H. Cheney from plaintiff and from J. E. Camp, sheriff, be cancelled." A further prayer is, that the deed from Mrs. Cheney to Murkerson be cancelled, " and that her said lands be freed from all of said liens, and that she recover her said land ; " also that she be allowed to recover of Mrs. Cheney " damages by reason of her said failure to pay plaintiff the difference in her debt and the price Jim Murkerson paid for said land, as she agreed to do." There was no prayer for general relief. The defendant filed a demurrer upon various grounds, among the number being one that the petition did not set forth any cause of action, and that plaintiff can not go behind the judgment referred to in the petition and set up usury in the original contract. The court sustained the demurrer, and the plaintiff excepted.

Even if the contract between the plaintiff and Mrs. Cheney was infected with usury, it was too late, after judgment had been rendered on the notes, to attempt to take advantage of this as a defense to the judgment. The judgment precludes the defendant therein from ever setting up any defect of this character in the transaction which was the foundation of the judgment. See *Hendrix* v. *Webb*, 113 *Ga.* 1028, 1030, and cases cited. A general demurrer to an equitable petition, that it sets forth no cause of action, requires a decision only as to whether the plaintiff, under the allegations of the petition, is entitled to the relief asked for therein. See *Steed* v. *Savage*, 115 *Ga.* 97. The plaintiff in an equitable petition must not only allege facts which will show that he is entitled to relief, but by his prayers must indicate the nature of that relief. The plaintiff in an equitable petition will never be granted any relief unless there is a prayer asking for the specific relief sought, or unless there is a prayer for general relief and the nature of the case is such that under the prayer for general relief some character of relief may be granted which is consistent with the case made by the petition and with the specific prayers therein. Such being the rule, the plaintiff is confined to his prayers for relief; and in order to determine whether an equitable petition sets forth a cause of action, it is only necessary to determine whether the allegations of the petition are such as to authorize the particular relief which is the subject-matter of the prayers. Applying these principles to the petition in the present case, we can not do otherwise than hold that

it did not set forth a cause of action. Let it be conceded that the allegations of the petition are sufficient to authorize a decree setting aside the sale of the land and restoring the status as it existed prior to the sale, that is, revesting the title to the land in the plaintiff and giving to the defendant Mrs. Cheney her three unsatisfied executions upon the property : there is nothing in the prayers of the petition to indicate that this was the character of the relief sought. When the prayers are taken as a whole, it is evident that the relief which the plaintiff seeks is to have the debt of Mrs. Cheney purged of the usury. She prays that she be now allowed to pay off her indebtedness by paying simply what she claims to be the true principal, with lawful interest thereon, and that upon payment of this amount the deeds be cancelled. She further prays that she recover of Mrs. Cheney a sum of money which it is apparent is intended to be the difference between the purchase-money of the property under the sale to Murkerson and the debt due by the plaintiff to Mrs. Cheney, purged of the alleged usury. The only prayers which refer to the matter of setting aside the sale are those which seek in this proceeding to purge the debt of usury. The prayer for the specific recovery of the land does not seek to recover subject to Mrs. Cheney's judgment, freed from the effects of the sheriff's sale, but that prayer distinctly asks that she recover the land freed from all liens, and following this is the prayer for the recovery of the rents and profits. Under no circumstances do the prayers indicate a purpose on the part of the plaintiff to restore the status as it existed prior to the sale; and as she can no longer be heard on the question of usury, and all of her prayers for relief seem to be predicated upon this alleged defect in Mrs. Cheney's claim, she was not entitled to any of the relief asked, and the court properly dismissed her petition on demurrer.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*