23524. HALL et al. v. HIGGISON et al.

Submitted June 14, 1966—Decided July 7, 1966—
Motion to amend judgment denied July 21, 1966.

*Bloch, Hall, Groover & Hawkins, Wilbur D. Owens, Jr.,* for
appellants.

*Buford E. Hancock,* for appellees.

Almand, Justice. Miss Sarah Hall, Mrs. Louise Hazard Bren-
ner and Mrs. Sarah Hazard Babcock brought an equitable pe-

tition in Bibb Superior Court against Mrs. Amaryllis Hall Higgison, John Joe Higgison and William A. Smith. The petition alleged: Miss Hall, Mrs. Higgison and Mrs. Margaret H. Hazard, mother of Mrs. Brenner and Mrs. Babcock, were sisters, and in 1945 they discussed investing certain money which they expected to inherit in a home to be jointly owned and occupied by them. After this discussion, "it was agreed that a family home would be purchased, owned and occupied jointly." A tract of land described in the petition was located in Bibb County and purchased for $4,000 furnished by the defendant Mrs. Amaryllis Higgison, she being the only one in possession of cash funds at the time, and title to this tract was placed by deed dated August 4, 1945, in the name of Mrs. Margaret H. Hazard, who then lived in Bibb County, in order to take advantage of the homestead exemption law. On January 31, 1951, Mrs. Hazard conveyed the said tract of land to Mrs. Higgison by deed of gift which was recorded as was the deed to Mrs. Hazard. On February 5, 1954, plaintiff Hall and defendant Higgison entered into a contract as "owners" with one Paul Hendrix for the construction of a house on the said tract of land, and pursuant to this contract, a house was built for $15,250 of which Miss Hall paid $8,000, Mrs. Higgison paid $2,000 and Mrs. Hazard paid $5,250. After completion of the house in 1954, Miss Hall moved there and has resided there ever since. Mrs. Hazard lived in the house until her death in 1957, and Mrs. Higgison returned to Macon in 1959 or 1960 from Columbus, where she previously resided, and moved into the house. Mrs. Higgison lived in the house until 1964 when it is alleged she suffered a stroke, changed her personality and became hostile toward Miss Hall. On June 6, 1960, Mrs. Higgison conveyed one-half of the original tract of land to defendant William A. Smith for $4,000 by deed which was recorded, but this part of the property is not that upon which the house is built. Miss Hall did not know of this conveyance until it was agreed upon, and she was refused any share of the $4,000 proceeds after making a demand therefor. Miss Hall through her attorneys has requested Mrs. Higgison to sign legal papers showing plaintiff's interest in the property, but these demands were not complied with. By warranty deed dated

April 26, 1963, Mrs. Higgison conveyed the remaining one-half of the real property upon which the house is situated to her son the defendant John Joe Higgison, and Miss Hall knew nothing of this transaction until her attorney examined the title to said property. Since 1963 Miss Hall has constantly requested defendants Higgison to sign deeds and papers to indicate her ownership of the property in proportion to the amount paid by the parties to the original agreement. On July 28, 1965, John Higgison brought a dispossessory proceeding against Miss Hall alleging that she was a tenant at sufferance. Plaintiffs Brenner and Babcock did not learn of the facts and circumstances of the purchase of the house and property until 1965, at which time they requested and were refused a deed to any portion of the property by defendants Higgison. On February 6, 1964, plaintiff Hall recorded an affidavit giving formal notice of her claims to the property. The foregoing statements are the allegations contained in plaintiffs' petition.

Plaintiffs prayed that defendant John Joe Higgison be enjoined from prosecuting his dispossessory proceedings, that an implied trust be impressed upon the property in favor of the plaintiffs in accordance with the facts and circumstances of the case and that they be granted general equitable relief.

Defendant Smith's general demurrer to the petition was sustained from which judgment plaintiffs have filed no appeal. Defendants Amaryllis and John Higgison filed their separate general demurrer and 27 special demurrers to plaintiffs' petition. The general demurrer was sustained, and it is to this ruling that plaintiffs have filed their appeal and enumerate error. No ruling was made in the trial court on the 27 special demurrers.

■ On August 13, 1965, defendants Higgison filed a suggestion of record in which they state that John Higgison has dismissed his dispossessory proceedings. Since the plaintiffs prayed that only the dispossessory proceeding set out in the petition be enjoined, we will not consider this prayer of the petition on appeal.

■ Plaintiffs' petition prayed that an implied trust be impressed upon the real property and that the court decree that the ownership of said property be vested in petitioners in accordance with the facts and circumstances of the case. The Code

provides that "Trusts are implied—1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another." Code § 108-106 (1). This court has said that implied trusts are either resulting or constructive, the latter arising where there is fraudulent conduct and no intent of the parties is involved. The implied resulting trust is based on the intention of the parties. *Loggins v. Daves*, 201 Ga. 628 (40 SE2d 520). There being no allegation of fraud in the petition before us, this opinion will be limited to a consideration of the resulting trust only. In the *Loggins* case this court said, "In order to set up such an implied resulting trust in favor of one paying the purchase money where the title is placed in another, it is indispensable that it be shown that the purchase price was paid by the beneficiary of the trust at or before the time the conveyance was made, or that it be shown, other than by a void parol agreement, that it was the intent and purpose of the parties *at the time the conveyance was made* that the one claiming the benefit of the trust should pay the purchase money in conformity with such original intent and purpose of the parties." Id. at 628 (4).

The plaintiffs' petition shows affirmatively that Mrs. Higgison paid the entire purchase price of the real property at the time of the conveyance, and no contribution was made by the plaintiffs at that time. The only intention shown in the allegations that plaintiff Hall and Mrs. Hazard were to pay any portion of the purchase price of the real estate is the alleged oral agreement in 1945. In addition to the authority already cited, it has been held that such an oral agreement cannot be considered as determining the interests to be owned by the parties. *Stevens v. Stevens*, 204 Ga. 340 (2) (49 SE2d 895); *Clark v. Griffon*, 207 Ga. 255 (2) (61 SE2d 128).

The plaintiffs point out that they have contributed $13,250 of the $15,250 construction costs of the house erected upon the real estate. This court has held that where plaintiff alleged that he contributed "$2,000 'on the purchase price and in repairs and improvements to the property, and said amount represents more than one-half of the purchase price and fair market value of

said property,' " where there was no allegation that he contributed anything at or before the time of its purchase and where there was an agreement as to the ownership of legal title between the parties, the petition was subject to a general demurrer. *Johnson v. Johnson*, 210 Ga. 795 (1) (82 SE2d 831).

The allegations in plaintiffs' petition are insufficient to set out a cause of action for an implied resulting trust under *Code* § 108-106 (1).

■ In their brief, appellants argue that if their petition does not contain sufficient allegations to set out a cause of action for an implied trust, then the trial court erred in sustaining the general demurrer to their petition if it set forth enough facts to entitle plaintiffs to specific performance of the alleged oral agreement. In addition to the prayers for specific equitable relief previously dealt with in this opinion, plaintiffs prayed only that they "be afforded such other and further relief as the court may deem equitable and just." In a case with similar prayers to the ones contained in the instant case in that there were specific prayers followed by a general one, the court held: " 'The plaintiff in an equitable petition will never be granted any relief unless there is a prayer asking for the specific relief sought, or unless there is a prayer for general relief, and the nature of the case is such that under the prayer for general relief, some character of relief may be granted which is consistent with the case made by the petition and with the specific prayers therein.' *Copeland v. Cheney*, 116 Ga. 685, 687 (43 SE 59). The prayer for general relief in this case is not sufficiently specific to embrace a prayer for specific performance, and for that reason we will not consider the contentions of the plaintiffs for this relief." *Pound v. Smith*, 146 Ga. 431 (2) (91 SE 405).

For the foregoing reasons, the court did not err in sustaining the general demurrer to plaintiffs' petition.

*Judgment affirmed. All the Justices concur.*