In the Matters of The GEORGIAN VILLA, INC., A Georgia Nonprofit Corporation, Debtor,

In re ATLANTA WEST GENERAL HOSPITAL, INC., A Georgia Non-profit Corporation, Debtor.

The GEORGIAN VILLA, INC., and Morton P. Levine, Receiver of the Georgian Villa, Inc., Plaintiffs,

v.

CITY NATIONAL BANK OF BIRMING-HAM, et al., Defendants.

ATLANTA WEST GENERAL HOSPITAL, INC., and Morton P. Levine, Receiver of Atlanta West General Hospital, Inc., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Bankruptcy Nos. B77–2621A, B77–2622A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

March 6, 1981.

David T. Emerson, Tinsley & Emerson, Douglasville, Ga., for Glenmore and Sarah Carter.

Joseph J. Burton, Jr., Herbert C. Broadfoot, II, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for receiver.

HUGH ROBINSON, Bankruptcy Judge.

## ORDER

This matter comes before the Court on cross motions for summary judgment filed by Morton P. Levine, the receiver for the debtors, and by Glenmore and Sarah E. Carter. Having considered the stipulation of facts, the briefs and documentary evidence submitted by the parties and the pleadings on file the Court makes the following decision.

### FINDINGS OF FACT

The following findings of fact, derived substantially from the stipulation of fact submitted by the parties, have been supplemented with additional findings based on the evidence before the Court.

Glenmore and Sarah Carter are the founders of the Georgian Villa, Inc., ("the Villa"), and Atlanta West General Hospital, Inc. ("Altanta West"). On January 28, 1974, the Carters entered into an agreement denominated "Exchange Agreement" with the Villa. The agreement contemplated an exchange of certain property generally described as a tract then owned by the Carters fronting on Highway 6, (the "commercial tract") which was to be exchanged with certain property then owned by the Villa on which is now located the Atlanta West Hospital Professional Building, (the "professional building tract"). Paragraph 5 of the Exchange Agreement also contemplated that the Carters would designate an additional tract to be conveyed to them as further consideration for the exchange. The Carters so designated 54.5 acres, (the "Carter tract"), to be conveyed to them as this additional consideration. Although the exchange of the commercial and professional building tracts occurred as contemplated in paragraph 10 of the Exchange Agreement, the Carter tract was never conveyed to the Carters. Aside from this one exception, the Villa and the Carters fully performed all other obligations under the Exchange Agreement.

On or about July 23, 1974, the Carters signed a contract entitled "Agreement" with the First National Bank of Dayton, Ohio, (the "Bank"), the Villa, and Atlanta West. This agreement will be referred to as the "Retirement Agreement". The Villa and/or Atlanta West partially performed

the obligations imposed by the Retirement Agreement. Several of the contractual obligations of the Villa and Atlanta West were not fulfilled including the obligation to convey the Carter tract to the Carters pursuant to the Exchange Agreement or, in the alternative, to pay the Carters $53,-225.00. The Bank performed its obligations under the Retirement Agreement by releasing the Carter tract from the lien of the Trust Indenture for the Atlanta West bonds. The Carters fully performed all of their obligations under the Retirement Agreement.

Although a Quit-Claim deed to convey the Carter tract dated November 23, 1976 was prepared, it was never executed or delivered.

Atlanta West and the Villa filed petitions under Chapter XI of the Bankruptcy Act on September 29, 1977 and Morton P. Levine, ("Receiver"), was appointed receiver for the two corporations on October 3, 1977. An adversary proceeding was initiated by the Receiver on July 6, 1979 by the filing of a complaint to sell the assets of the Villa free and clear of all liens and encumbrances to the Hospital Corporation of America, ("HCA"). Glenmore and Sarah Carter, among others, were named defendants in this adversary proceeding. By previous stipulation between the Receiver and the Carters, the Carters did not interpose any objection to the sale of the hospital assets except with respect to the Carter tract to which the Carters claim a constructive or resulting trust. Said property was not conveyed to HCA and is still owned and titled in the Villa. This property is not used in the operation of Atlanta West Hospital (now Parkway Regional Hospital).

A hearing on the claim of the Carters to the real property in question was held on or about August 4, 1980. The matter has been submitted to the Court on cross motions for summary judgment. Certain documents submitted to the Court with the motions for summary judgment have been stipulated by the parties to be authentic, relevant and admissible on the issues before this Court.

APPLICABLE LAW

A motion for summary judgment may be granted only when there are no genuine issues of material fact remaining to be tried. Rule 56 of the Federal Rules of Civil Procedure. As the parties have stipulated to all material facts in this case, resolution of the dispute on motion for summary judgment is appropriate.

I. *Carter's Claim to an Equitable Interest in the Carter Tract*

The Carters argue that the real property in question was subject to an implied trust in favor of the Carters long before the debtors filed their Chapter XI petitions. This trust allegedly materialized when the Carters completed their obligations under the Exchange Agreement. It is argued that the Receiver acquired title to the Carter tract subject to the Carters' equitable interest therein, therefore the Carters are entitled to performance of the Exchange Agreement.

The Receiver argues that an implied resulting trust is created through the mutual intention of the parties that the person to whom legal title is transferred holds the property in trust for the person who paid the purchase price. It is contended that this mutual intention is absent in the instant case.

In bankruptcy proceedings state law determines the existence or validity of third party equities in property held by the trustee. *In Re: Clemens*, 472 F.2d 939 (6th Cir. 1972). See also *Dallas Cabana, Inc. v. Collier*, 469 F.2d 606 (5th Cir. 1972), cert. denied 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973). Because the subject property in the instant case is located in Georgia the law of the state of Georgia will determine the existence and validity of the Carters' claim.

A trust is implied whenever legal title is in one person, but the beneficial interest, either from payment of the purchase money or other circumstances, is either wholly or partially in another. Ga. Code Ann. § 108–106(1); *McDonald v. Dab-*

*ney*, 161 Ga. 711, 132 S.E. 547 (1925). The Receiver correctly asserts that the intention of the parties is the essential element of an implied resulting trust. In order to prove an implied resulting trust in favor of one paying purchase money where title is placed in another it must be shown that the purchase price was paid by the beneficiary of the trust at or before the time the conveyance was made or it must be shown that it was the intent and purpose of the parties at the time of the conveyance that the one claiming the benefit of the trust should pay the purchase money. This intent may be established by proof of an initial payment by one claiming the benefit of the trust at or before the time title is conveyed to another. *Hall v. Higgison*, 222 Ga. 373, 149 S.E.2d 808 (1966); *Loggins v. Daves*, 201 Ga. 628, 40 S.E.2d 520 (1946).

The Receiver takes the position that there is no basis on which the Court may find an implied resulting trust in this case. It is contended that the Carter tract was originally conveyed by the Carters to the Villa in 1963 or 1964. Allegedly it was not the intention of the parties that this gift would be held in trust for the Carters. Because this intention was lacking, the Villa's later failure to convey the property under the Exchange Agreement was only a breach of contract which did not give rise to an implied resulting trust. The Receiver also stresses the fact that title to the Carter tract was never transferred to anyone by the Villa. It is argued that trusts are implied in situations where the property has been transferred to a party other than the beneficial owner. This situation is distinguished from the instant case in which title remained in the transferor. The Receiver essentially argues that the law of implied trusts is inapplicable in this case.

 The Court agrees with the contention of the Receiver. The test for determining the existence of an implied resulting trust focuses on the time of conveyance of the property. A trust is implied when the beneficiary pays the purchase price for the land at or before the time of the conveyance or when it is shown that it was the intent and purpose of the parties at the time of the conveyance that the one claiming the benefit of the trust should pay the purchase money. *Hall v. Higgison, supra; Loggins v. Daves, supra.* In the instant case the Carter tract was not conveyed pursuant to the Exchange Agreement. Therefore the Court does not have the crucial reference point, i. e. the time of conveyance, which is necessary for the application of the remainder of the test. The Court cannot determine the intent of the parties at the time of conveyance because no such conveyance occurred.

 It appears that the law of implied trusts does not assist the Court in its endeavor to determine the validity of the Carters' claim to the Carter tract. That is not to say that the Carters have no claim to the Carter tract. The Carters entered into an Exchange Agreement on January 28, 1974 under which certain pieces of real property were to be exchanged between the two parties. Pursuant to this contract the Carters executed a warranty deed for the land they were to convey on January 29, 1974. This warranty deed was recorded on April 9, 1974. It is undisputed that the Carters completely performed their obligations under the agreement. Where there is a valid, written contract for the purchase and sale of land, payment in full of the purchase price gives the buyer a perfect equity which is good title even at law. *Stembridge v. Smith*, 213 Ga. 227, 98 S.E.2d 609 (1957); *May v. Sorrell*, 153 Ga. 47, 111 S.E. 810 (1921). Although technically this transaction was an exchange of property and not a sale, it is sufficiently analogous to a sale to justify application of the above-stated principle of law. By fulfilling their obligations under the Exchange Agreement the Carters acquired an equitable ownership interest in the Carter tract tantamount to legal title.

██ A receiver ⟨⟩ a trustee in bankruptcy takes title to all property to which the debtor has title even though it is held in trust. However, title is acquired subject to the equities of third persons, and where it appears that the debtor is only a trustee and has no beneficial interest in or claim

against the property, the property will be turned over to the true owner. *In Re: Clemens, supra, Todd v. Pettit,* 108 F.2d 139 (5th Cir. 1939). The Receiver acquired title to the property which is the subject matter of this dispute subject to the equitable ownership interest of the Carters. Therefore the Carter claim is enforceable against the Receiver.

Several defenses to the enforceability of the Carters' claim have been asserted by the Receiver each of which will be addressed separately below.

## II. *Estoppel*

■ The Receiver alleges that the Carters should be estopped from asserting a claim to the Carter tract. Estoppel arises where one has acted to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice. *LeBold v. Inland Steel Co.,* 125 F.2d 369 (7th Cir. 1941) cert. denied 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749 (1942).

■ The Receiver contends that the Carters, as principals and trustees of the Villa, indirectly benefitted from the Exchange Agreement. It is asserted by the Receiver that having signed the Exchange Agreement on behalf of the Villa, the Carters should now be estopped from claiming either that the Villa had no intention of complying with the agreement or that they received no benefits therefrom.

The Court cannot discern from these allegations any reason for ruling that the Carters are estopped from asserting their claim in these proceedings. The undisputed facts simply do not reveal any misleading conduct on the part of the Carters that was relied on by the Villa to its detriment. Accordingly the Court concludes that the Receiver's estoppel argument is without merit.

## III. *Equity*

Several arguments have been made by the Receiver that it would be inequitable for the Court to allow the enforcement of the Exchange Agreement. The Receiver contends that the Villa will not receive a windfall if the Exchange Agreement is not enforced for the reason that the return, if any, on the property will be distributed to the unsecured creditors of the estate. The fact that the Carters have received substantial sums of money from the Villa under the Exchange Agreement and the Retirement Agreement is stressed. It is also alleged that it would be inequitable to give the Carter claim priority over those of the unsecured creditors who shared in the losses caused by the Villa's financial distress. Finally, there is a charge that the Carters are partly responsible for the Villa's financial troubles and consequently are not entitled to the equitable relief they seek.

■ The Carters acquired an equitable ownership interest in the Carter tract tantamount to legal title prior to the filing of the bankruptcy petition. This property came into the hands of the Receiver subject to that ownership interest. At no time did the unsecured creditors have any expectancy of receiving payment on their claims from the distribution of this property. Shared losses do not create rights in unsecured creditors to property as to which the Receiver holds title subject to the equitable interest of another party. That the Carters have received substantial sums of money from the Villa under the Exchange Agreement and the Retirement Agreement is irrelevant. These payments were not consideration for the property conveyed by the Carters to the Villa pursuant to the Exchange Agreement and therefore did not affect the claim to the Carter tract. As to the Receiver's final assertion, this Court is not convinced by the unsupported allegation concerning the Carters' contribution to the financial deterioration of the Villa that it would be inequitable to grant relief to the Carters. In conclusion, the Court rejects the Receiver's argument that equity bars the Carters' claim.

## IV. *Laches*

The Receiver argues that the Carters' claim is barred by the doctrine of laches. It is contended that the Carters delayed over three years in asserting their claim to the

85

Carter tract. According to the stipulation of fact entered into by the parties the Carters did not pay ad valorem taxes on the property, never paid insurance on the property, never filed individual or corporate tax returns reflecting ownership of the land, never had the tract platted or surveyed or conducted soil tests and never exercised control or authority over the Carter tract. According to the Receiver, by failing to assert their claim at an earlier time, the Carters are now barred by the doctrine of laches from asserting a claim in these bankruptcy proceedings.

 Where from lapse of time and other circumstances it would be inequitable to grant relief to a party, the doctrine of laches will be applied. *Citizens & Southern National Bank v. Ellis*, 171 Ga. 717, 156 S.E. 603 (1930). The applicability of this doctrine depends on the facts of each particular case. *Bacon v. Edwards*, 234 Ga. 100, 214 S.E.2d 539 (1975). To constitute the defense of laches the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy. The concern is that the loss or obscuration of evidence will make the doing of equity either doubtful or impossible. *Citizens and Southern National Bank v. Ellis, supra.*

> " . . . 'Laches is not, like limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced, an inequity founded on some intermediate change in conditions.' "

(citation omitted).

*Hodges v. Hodges*, 213 Ga. 689, 694–695, 100 S.E.2d 888 (1957).

 It is true that the Carters delayed for over three years in asserting their claim to the Carter tract. However, there is sufficient reliable evidence before the Court to ensure the just determination of the merits of the Carters' claim. Furthermore there has been no intervening change of circumstances which will make the enforcement of the claim unequitable. The Court concludes that the Carters' claim is not barred by the doctrine of laches.

## V. Disruption of the Distributive Provisions of the Bankruptcy Act

 The Receiver contends that the claim of the Carters is merely an unsecured debt which should not have priority over other unsecured debts. It is argued that allowance of this claim will violate the policy of equality of distribution among creditors.

The Carters do not occupy the status of a general unsecured creditor with regard to their claim. They have an equitable ownership interest in the Carter tract which is enforceable against the Receiver. Therefore the Carter tract never was available for distribution to the general unsecured creditors in the first place. The Court concludes that the allowance of the Carters' claim will not disrupt the policy of the distributive provisions of the Bankruptcy Act.

## VI. Equitable Subordination

The Receiver asserts that the claim of the Carters should be equitably subordinated to the claims of other creditors of the estate. The Exchange Agreement was signed on behalf of the Villa at a time the Carters occupied fiduciary positions as president and secretary of the board of trustees of the two debtor corporations. It is argued that because the hospital never profited under the Carters' direction and because the Carters allowed their claim to lie dormant for years, it would be inequitable to allow the claim to have priority or even equality with other claims.

 The power of the bankruptcy court to subordinate the claim of a creditor for equitable reasons is unquestioned. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In *In Re: Mobile Steel Company*, 563 F.2d 692 (5th Cir. 1977) the Fifth Circuit discussed equitable subordination at length. Two principal limitations on the subordination of claims were formulated. First, equitable subordination can justify only subordination, not disallowance. Second, three conditions must be satisfied:

(1) the claimant must have been engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred unfair advantage on the claimant; (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act. To further assist the analysis of the equitable subordination issue the Fifth Circuit stated three guiding principles: (1) inequitable conduct directed against the bankrupt or its creditors may be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim; (2) the claim should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct; and (3) dealings of a fiduciary are subjected to rigorous scrutiny and the burden is on the fiduciary to prove good faith and the inherent fairness of the transactions from the view of the corporation and those interested therein.

■■■ The Receiver contends that the Carters' claim should be equitably subordinated because Atlanta West Hospital never profited under the direction of the Carters. Emphasis is placed on the hospital's financial difficulties which resulted in the filing of a multi-million dollar class action securities fraud suit against the Carters and others and in the filing of a Chapter XI petition in this Court. It is also stressed that the Carters did not assert their claim until the debtor was in financial difficulties.

"To constitute the type of challenge contemplated by the Court, an objection resting on equitable grounds cannot be merely formal, but rather must contain some substantial factual basis to support its allegation of impropriety. Absent such a requirement, the wide-ranging inquiry authorized by the *Kansas City Journal-Post* case would place an unwarranted burden on fiduciaries by requiring them to prove the good faith and fairness of *every one* of their actions with respect to

their corporation at the pleasure of the Trustee."

*In Re: Mobile Steel Company, supra* at 701.

From reviewing the allegations of the Receiver the Court must conclude that these assertions do not constitute the type of challenge necessary to raise the issue of equitable subordination. The Receiver's contentions are not supported by a substantial factual basis, hence the objection to the allowance of the Carters' claim on the ground that it should be equitably subordinated is merely formal. Accordingly, the Court determines that the Receiver's argument that the claim of the Carters should be equitably subordinated to those of the other creditors of the estate is without merit.

## CONCLUSIONS OF LAW

1. There are no genuine issues of material fact remaining to be tried in this case.

2. By fulfilling their obligations under the Exchange Agreement the Carters acquired an equitable ownership interest in the Carter tract tantamount to legal title.

3. The Receiver acquired title to the Carter tract subject to the equitable ownership interest of the Carters.

4. The Carters are not estopped from asserting their claim in these bankruptcy proceedings.

5. It is not inequitable for the Court to allow the enforcement of the Carters' claim.

6. The claim of the Carters is not barred by the doctrine of laches.

7. The Receiver's assertions did not sufficiently raise the issue of equitable subordination. It is therefore

ORDERED that the motion for summary judgment filed by the Receiver shall be and same is hereby denied; and it is further

ORDERED that the motion for summary judgment filed by Glenmore and Sarah Carter shall be and same is hereby granted; and it is further

ORDERED that the Villa and the Receiver shall execute all documents necessary to vest legal title to the Carter tract in Glenmore and Sarah Carter.