Opinion for the Court filed by Circuit Judge GINSBURG.
GINSBURG, Circuit Judge:
This controversy was initiated in the Bankruptcy Court for the District of Columbia by the Air Transport Association of America (ATA), a trade association representing commercial airlines and a principal, unsecured creditor of the bankrupt Professional Air Traffic Controllers Organization (PATCO or Union).[1] The case concerns the ownership of bank accounts, amounting to approximately $4.3 million, denominated the PATCO Controller Benefit Fund (Fund).[2] On December 22, 1982, the Bankruptcy Judge declared the Fund an asset of PATCO, and therefore part of PATCO’s estate in bankruptcy. Appellants PATCO, Torchia, and Dwyer, representing the interest of PATCO’s former membership,[3] seek reversal of that declaratory order.
Appellants acknowledge that the Fund’s purpose, to provide financial assistance to PATCO members suspended or dismissed for participation in a “nationally sanctioned job action,” [4] has been thwarted by the decertification and imminent demise of PAT-CO. In view of circumstances established in the record beyond reasonable dispute,[5] we hold that, upon failure of the Fund’s objective, the accounts in question reverted to PATCO. Accordingly, we affirm the Bankruptcy Court’s final order.
I.
Until 1981, PATCO was the exclusive bargaining representative of civilian air traffic controllers employed by the Federal Aviation Administration (FAA). On August 3 of that year, PATCO called an illegal nationwide strike against the FAA;[6] that action led to the Union’s decertification. See PATCO v. FLRA, 685 F.2d 547 (D.C. *75 Cir.1982).[7] During the strike’s four-day course, on August 4, 5, and 6, 1981, the District Court for the Eastern District of New York entered civil contempt judgments against PATCO, and in favor of ATA, totaling $4.5 million.[8] In addition to the contempt judgments, on December 7, 1981, the same court awarded airline plaintiffs more than $28 million as compensatory damages for losses occasioned by PATCO’s strike. The airlines assigned most of the damage awards to ATA. See In re PATCO, 699 F.2d 539, 541-42 & n. 6 (D.C.Cir.1983); Brief for Appellee at 13.
PATCO filed a Chapter 11 petition in the Bankruptcy Court on November 25, 1981. On July 6, 1982, on PATCO’s motion, the Bankruptcy Judge ordered the case converted from a Chapter 11 reorganization to a Chapter 7 liquidation. The Controller Benefit Fund, if it belongs to PATCO, would constitute the bulk of the debtor’s estate.-[9] ATA maintains that the Fund is PATCO’s asset; appellants contend that the Fund belongs to'PATCO’s former members.
The Fund was inaugurated in 1977 pursuant to a “Dues Resolution” setting the national dues of PATCO at 1.5% of members’ base pay and allocating the total sum collected as follows: “75 percent to National”; “10 percent to Dues Rebate”; “15 percent Controller Benefit Fund.” Joint Record Excerpts (JRE) at 61. A further resolution, passed in 1978, states that the Fund “shall consist of those monies collected from dues for that purpose,” and identifies as the Fund’s objective provision of “financial support of members whose participation in a nationally sanctioned job action has resulted in suspension and/or dismissal.” JRE at 58 (PATCO Resolution No. 10, passed May 10, 1978, Art. I, §§ 1, 3). The 1978 resolution, id. (Art. II, § 2), charges the Union’s Finance Committee with “overview responsibility of the Fund”; it also designates PATCO’s Executive Vice-President as “responsible and accountable for the proper receipts and disbursement of all monies of the Fund, in accordance with Article II, Section 4b of the PATCO Constitution,” id. (Art. II, § 1), which, in turn, renders the same officer “responsible and accountable for the proper receipts and disbursements of all monies of the organization.” PATCO Const, art. II, § 4b. At the time ATA filed its complaint, the Fund was held in separate accounts established by PATCO at the National Savings &. Trust Bank. By stipulation of the parties, dated December 28, 1982, those accounts have been turned over to the Trustee in Bankruptcy for maintenance of the Fund during the pendency of this appeal.
At trial before the Bankruptcy Judge, the parties centered their contest on three issues: (1) whether the Fund constituted a trust under District of Columbia law;[10] (2) if a trust was created, whether it should be invalidated as contrary to public policy in view of legislation prohibiting strikes by *76 employees of federal agencies;[11] (3) in the event of the Fund’s dissolution by court decree, whether the Fund should be distributed to the former PATCO members who contributed to it or should vest in the bankruptcy estate. See JRE at 42. The Bankruptcy Judge concluded that (1) the Fund had been established and essentially maintained as a trust, (2) the trust failed for illegality because its actual purpose contravened public policy against strikes by government employees, (3) the Fund should vest in the bankruptcy estate. Id. at 41-57 (December 22,1982, Memorandum Opinion).
We assume, without deciding, that the Bankruptcy Judge correctly determined that the Fund was created and maintained as a trust. Further, we pretermit the question whether the alleged trust failed for illegality. At oral argument, appellants acknowledged that, even if the Fund constituted a trust lawful in design,[12] it nonetheless failed “because it cannot achieve its purpose now” since “PATCO is dead.” Transcript of Oral Argument [hereafter, Tr. Oral] at 12. Treating the Fund as a trust that failed because its purpose cannot be achieved, the controversy reduces to a single question which both sides understood to be “critical”: who is the trust’s donor, PAT-CO or its former members? See id. at 20, 25, 34-35, 41.
In briefing and arguing this case, appellants blurred two questions: whether the Fund was a trust and, if it was, who was the donor. See, e.g., id. at 16-17. Appellants, moreover, appeared to assume that, because PATCO’s former members, through their checked-off dues, were the original source or contributors of the Fund money, the members necessarily qualified as the Fund’s donor. See id. at 17. Appellants also blended the uncontested fact that former PATCO members were the intended beneficiaries of the alleged trust, with the pivotal issue, whether the members, collectively, constituted the donor. See Joint Brief for Appellants at 38. The Bankruptcy Judge thought it unnecessary to decide whether PATCO or its individual members should be deemed donor, see JRE at 54-55, although he noted that ample evidence supported “the legal position of ATA that PATCO is in fact the donor of the trust.” Id. at 55 n. 15.
We explain below why we conclude that the trial record mandates identification of PATCO as the donor and requires our affirmance of the Bankruptcy Court’s decision vesting the Fund in the Trustee in Bankruptcy as property of the debtor PATCO’s estate.
II.
The Bankruptcy Judge observed, as indicating that PATCO, not its members, was the alleged trust’s donor that “dues were remitted to the Union in accordance with the established check-off system,” and that “the monies transmitted to the Fund came from the Union itself.” Id. at 55 n. 15.[13] *77 Union dues PATCO received from the FAA remained in the Union’s general operating accounts for prolonged periods (four to five months in some cases) before PATCO transferred 15% to Fund accounts. Id. at 46 n. 6, 50 n. 11. These circumstances are uncontroverted. Moreover, appellants presented no evidence indicating that PATCO’s members were ever counseled that, for income tax purposes, contributions to the Fund qualified as anything other than a part of their mandatory union dues.[14] On the contrary, when the Fund was inaugurated in 1977, the “Resolution Ballot” distributed to, the membership consistently characterized the matter put to a vote as “dues” mandated as a condition of Union membership. Members were asked to vote on a “new dues structure” under which 15% of “the national dues of PATCO” would be distributed to the Fund. Id. at 60-61.[15]
Union dues are the union’s property; they are “subject to disbursement and expenditure by the [union] in pursuit of the lawful object or objects for which they were designated to be expended,” but they nonetheless belong, upon payment, to the union, not severally to the individual dues payers. De Mille v. American Federation of Radio Artists, 31 Cal.2d 139, 187 P.2d 769, 776 (1947), cert. denied, 333 U.S. 876, 68 S.Ct. 906, 92 L.Ed. 1152 (1948); see House v. Schwartz, 188 N.Y.S.2d 308, 328 (Sup.Ct.1959); see also Bassick Co. v. Bassick Local 229, 126 F.Supp. 777, 779 (D.Conn.1954) (check-off funds attachable as property of union despite claim that union held a portion in trust for immediate payover to affiliates where check-off contract with employer refers only to dues of the union). While the record in this case demonstrates that PATCO’s members instructed the Union to use a portion of the Union’s dues receipts to maintain a fund for payments to controllers suspended or dismissed for participation in a Union-approved job action, it does not support a finding that part of the amount the FAA deducted from the controllers’ pay *78 and transmitted to PATCO constituted something other than dues.[16]
Because the circumstances presented here indicate securely that PAT-CO contributed dues, not payments of some other genre, to the Fund, PATCO, not its former members, qualifies as the Fund’s donor. When an express trust fails because it has become impossible to accomplish its purpose, the trust assets are generally held in a resulting trust for the donor. See [Sections 361 to 470]. G. Bogert & G. Bogert, The Law of Trusts & Trustees § 468 (rev. 2d ed. 1977); [Sections 975 to 1030] id. § 1002 (rev. 2d ed. 1983); Restatement (Second) of Trusts §§ 335, 411 (1959); 4 A. Scott, Scott on Trusts §§ 335, 411 (3d ed. 1967).[17] Appellants suggest that PATCO, if it was the donor, manifested a contrary intent at the outset, an intent that Union members, not PATCO, receive the assets upon the Fund’s termination. Had PATCO, when it established the Fund, manifested such an intent, the case would fall outside the general rule’s governance. [Sections 361 to 470] G. Bogert & G. Bogert, supra, § 468, at 812-13; Restatement (Second) of Trusts §§ 411, 412 (1959); A. Scott, supra, §§ 411, 412. In support of their position, appellants cite PATCO’s 1978 Resolution, which comprises the Fund’s by-laws, and indicate that PATCO there provided for distribution of the assets pro rata to contributing members upon the Fund’s dissolution. See Joint Brief for Appellants at 35 n. 34, 36 n. 38. But the provision appellants cite, JRE at 58 (Art. I, § 2), states only this:
The Fund shall be perpetual unless dissolved by majority vote of the members [of] the Fund. In case of dissolution, all financial obligations of the Fund must be paid prior to disbursement of the monies.
We cannot extract from these terse instructions any identification of the recipient of the monies in the event of the Fund’s termination.
Summary and Conclusion
Appellants acknowledge that PATCO’s Controller Benefit Fund cannot serve the purpose for which it was established. Therefore, even if the Fund was held in a trust lawful in design, the trust fails because its objective has become impossible. The dues payments used to maintain the Fund, upon their receipt by PATCO, be *79 came the Union’s property. The Union was therefore donor of the alleged trust. Because PATCO manifested no contrary intent when the Fund was inaugurated, the monies now in the Fund revert to PATCO. The Bankruptcy Court’s order declaring the Fund vested in the Trustee in Bankruptcy as property of PATCO’s estate is accordingly

Affirmed.

. On ATA’s effort to achieve the status of a secured judgment creditor, see In re PATCO, 699 F.2d 539 (D.C.Cir.1983).

. See Transcript of Oral Argument [hereafter, Tr. Oral] at 4 (Fund totalled $4,337,070 as of October 6, 1983).

. Appellant Domenic V. Torchia was PATCO’s last Executive Vice-President; appellant John Dwyer was a PATCO member who is no longer employed by the Federal Aviation Administration (FAA).

. See Joint Record Excerpts (JRE) at 44 n. 2, 58 (PATCO Resolution No. 10, passed May 10, 1978, Art. I, § 3).

. On our analysis, no pivotal, genuinely debatable fact question exists in the case. We therefore dismiss as moot appellants’ challenge to the Bankruptcy Court’s pre-trial decision, affirmed on interlocutory appeal to the District Court, granting ATA’s motion to strike the jury trial demand made by PATCO and Torchia. See, e.g., In re N-500L Cases, 691 F.2d 15, 25-32 (1st Cir.1982) (affirming judgment of contribution against appellants because unrebutted evidence meant “a jury verdict in favor of [defendant] would not have been permitted to stand, and [therefore] the error in denying a jury trial to appellants on the issue of [defendant’s] liability to plaintiffs was harmless”); United States v. Williams, 441 F.2d 637, 644 (5th Cir.1971) (affirming judgment against defendant, despite erroneous denial of his jury trial demand, because evidence would have required directed verdict against defendant); Floyd v. Ring Constr. Corp., 165 F.2d 125, 131 (8th Cir.) (“Whether the court erred in denying a jury trial is immaterial in view of our conclusion that the evidence conclusively establishes that it would have been the court’s duty to direct a verdict for the defendant had the trial been to a jury.”), cert. denied, 334 U.S. 838, 68 S.Ct. 1496, 92 L.Ed. 1763 (1948).

.It is unlawful for federal employees to engage In strikes, work stoppages or any similar activity interfering with a federal agency’s operations. See United Fed’n of Postal Clerks v. Blount, 325 F.Supp. 879, 884 (D.D.C.) (three judge court), aff’d mem., 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971); 5 U.S.C. § 7311(3) (1982); 18 U.S.C. § 1918 (1982); see also 5 U.S.C. § 7116(b)(7) (1982) (unfair labor practice for federal employee union to call, participate in, or condone such activity).

. More than 10,000 PATCO members who participated in the strike were discharged by the FAA. See 48 Fed.Reg. 2235 (1983).

. These judgments derived from a 1970 stipulation of settlement approved by the same court permanently enjoining PATCO from “in any manner, calling, [or] causing ... any strike (including any concerted stoppage, slowdown, or refusal to report to work) by air traffic controllers ----” See ATA v. PATCO, 453 F.Supp. 1287, 1290 (E.D.N.Y.), aff'd mem., 594 F.2d 851 (2d Cir.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979); see also In re PATCO, 699 F.2d 539, 541-42 (D.C.Cir.1983).

. Apart from the approximately $4.3 million in the Fund, PATCO’s Schedule of Assets and Liabilities filed with the Bankruptcy Court lists assets of less than $1 million. See Brief for Appellee at 13.

.Generally, if the debtor held property in trust for another, the debtor’s trustee in bankruptcy holds the property subject to the same trust. See In re Georgian Villa, Inc., 10 B.R. 79, 83-84 (Bkrtcy.N.D.Ga.1981); In re Wyatt, 6 B.R. 947, 952-53 (Bkrtcy.E.D.N.Y.1980).
PATCO was headquartered in the District of Columbia, and the Fund was created, maintained, and administered in the District. Therefore, the parties agree that “[t]he Fund should ... be construed under District of Columbia law.” JRE at 48 n. 9. See generally 4 Collier on Bankruptcy ¶ 541.02, at 541-10 (L. King 15th ed. 1983) (state law generally determines whether debtor has interest in property).

. See supra note 6.

. The Bankruptcy Judge noted testimony by PATCO’s President, Robert Poli, at Hearings before the Subcommittee on Investigations of the Committee on Post Office and Civil Service, House of Representatives, 96th Cong., 2d Sess., September 30, 1980, in which Mr. Poli affirmed that “the PATCO strike fund is not meant for current use.” He said “[PATCO was] allowed to have [the Fund] in the event that legislation passes that grants [federal employees] the right to strike.” JRE at 47 n. 7.

. Under the dues check-off system the FAA operated for PATCO, the agency deducted 1.5% from each member’s base pay and transmitted these monies, without segregating any portion, to PATCO. Those PATCO members not utilizing the check-off system each sent in a single personal check representing the same 1.5%. PATCO deposited these checks in its general operating accounts. Transcript of Trial (10/12/82) at 74-75, 160 (testimony of former PATCO Comptroller James E. Scott); id. at 218-19 (testimony of former PATCO Comptroller David M. Duren); id. (10/13/82) at 155 (testimony of former PATCO Executive Vice-President and President Robert E. Poli). After some delay, PATCO transferred 15% of the amounts transmitted by the FAA and the directly billed members (but, apparently, not any interim interest earnings of PATCO thereon, id. (10/12/82) at 109 (testimony of former PATCO Comptroller James E. Scott); id. at 221-22 (testimony of former PATCO Comptroller David M. Duren); id. (10/14/82) at 157, 162-63 (testimony of PATCO Auditor Harold Babitz)) from Union operating accounts to Fund accounts. *77 Id. (10/12/82) at 97-101 (testimony of former PATCO Comptroller James E. Scott); id. at 119-20 (testimony of former PATCO Comptroller David M. Duren); id. (10/13/82) at 154 (testimony of former PATCO Executive Vice-President and President Robert E. Poli); id. (10/14/82) at 155-56 (testimony of PATCO Auditor Harold Babitz).

. At oral argument counsel for appellants asserted that the monies collected for the Fund were “legally separate contributions” that “were tax-deductible” although “not contributed directly as part of union dues.” Tr. Oral at 4; see id. at 14, 22; Joint Brief for Appellants at 38. Counsel acknowledged, however, that the record is silent on any advice to the members that the monies earmarked for the Fund were tax deductible, not as dues, but as something else. Tr. Oral 14, 22.
A tax deduction by PATCO’s members of the 15% allocated to the Fund would be appropriate if that amount were part of union dues; such deduction would appear doubtful if Fund contributions were not made “as part of union dues.” Except in narrow circumstances not here relevant, dues and other union assessments are deductible in full by a member who itemizes deductions. I.R.C. § 62(2) (1976); Treas.Reg. § 1.162-15(c) (1965); see also Rev. Rui. 69-214, 1969-1 C.B. 52. That result does not change when the assessment is made to provide the union with funds for later payment of benefits to members out of work. Rev.Rul. 72-463, 1972-2 C.B. 93. On the other hand, if a fund is established for the benefit of unemployed members, and members contribute specifically to that fund through payments separate and apart from those made as union dues, it is the position of the Internal Revenue Service that, even though the separate benefit plan may have been initiated by the union, the contributions are not deductible. Rev.Rul. 57-383, 1957-2 C.B. 44; see Rev.Rul. 59-5, 1959-1 C.B. 12. See also I.R.C. §§ 671, 673(a), 677(a)(1)-(2) (1976) (accumulated trust income attributable to any portion of trust treated as owned by grantor is currently includible in grantor’s gross income).

. The text of the ballot stated in relevant part;
DUES RESOLUTION
BE IT RESOLVED, that the national dues of PATCO be 1.5 percent of the base pay ...; BE IT FURTHER RESOLVED that the above funds shall be distributed as follows;
... 15 percent Controller Benefit Fund 1977 DUES AND INITIATION FEES BALLOT
... If you wish to continue the present dues structure then you would vote NO. If you accept the new dues structure adopted by the voting representatives, as proposed herein, you would vote YES....
JRE at 61.

. The assertion that PATCO’s members were the donors of the Fund arises as an affirmative defense to ATA’s claim that the Fund should be counted among PATCO’s assets. Information in support of the assertion, including the members’ understanding and treatment of monies paid into the Fund as something other than dues, is peculiarly within appellants’ ken. The burden of proof therefore appropriately rests with appellants. See Nader v. de Toledano, 408 A.2d 31, 48 (D.C.1979) (generally party pleading or asserting an issue has burdens of production and persuasion); Weaver v. Du Pont, 119 A.2d 716, 717 (D.C.1956) (party asserting affirmative defense has proof burden); McCormick’s Handbook of the Law of Evidence § 337, at 785 (E. Cleary 2d ed. 1972) (burdens of production and persuasion generally are on party pleading a fact). On the record before us, we conclude that appellants have not satisfied their threshold burden of production on this issue.
Appellants cite evidence that members intended Fund money to be spent only for the specified purpose, that local executive boards were to certify members eligible for benefits, and that the Union members could dissolve the Fund by majority vote. See Joint Brief for Appellants at 36-37. We fail to see how this evidence is inconsistent with qualification of receipts destined for the Fund as dues “subject to disbursement and expenditure by the [union] in pursuit of the ... object or objects for which they were designated to be expended.” See De Mille v. American Fed’n of Radio Artists, supra, 187 P.2d at 776.
Appellants further stress that PATCO did not report the 15% of dues destined for the Fund as income on its financial statements and described those monies in annual reports to the Labor Department as cash receipts “from members for disbursement on their behalf.” See Joint Brief for Appellants at 37-38. PAT-CO’s reporting methods are not fully reliable indicators of the Fund’s status, however. We note that in its annual reports to the Labor Department, PATCO responded in the negative to the question whether the Union had participated in the creation or administration of a trust fund. See Tr. Oral at 5-6; Brief for Appellee at 10-11.

. This general rule is applicable in the District of Columbia. See Washington Beneficial Endowment Ass’n v. Wood, 54 Am.Rep. 251 (D.C.1885). Property held in trust for a debtor is part of the debtor’s estate in bankruptcy. See 4 Collier on Bankruptcy, supra, ¶ 541.14.