### 19660. STEMBRIDGE *et al. v.* SMITH.

CANDLER, Justice. This litigation arose on November 2, 1955, when Y. Herman Smith filed an action against W. F. Stembridge of Crawford County, Georgia, and Leola Felton of Detroit, Michigan. In substance, the amended petition alleges: On October 3, 1955, the defendant Felton was the fee-simple owner of certain realty in Crawford County, and on that date she wrote T. P. Smith that she was interested in disposing of her land in that county; that she would sell it for $1,900 cash; and that if he knew of anyone who was

interested in purchasing it at that price, to let her know. On October 8, 1955, T. P. Smith wrote the defendant Felton that the plaintiff desired to purchase her land. With that letter he sent her the plaintiff's personal check for $1,900 which was drawn on the Crawford County Bank, together with a warranty deed for the land which she was requested to execute. The letter to her reads in part: "Leola, I believe you know Mr. Herman but if you wish, you can let the check clear through the banks before mailing the deed back. If you do that please drop me a line letting me know that you have executed the deed and will mail same when the check clears." On October 12, 1955, she wrote T. P. Smith: "I received your letter with the check and deed and I am having the check cleared through the banks. Will send the deed to you as soon as the check is clear." The check to her for $1,900 was paid by the bank on which it was drawn on October 14, 1955. On October 15, 1955, the defendant Stembridge asked T. P. Smith if he had an option on the Felton land, and T. P. Smith then informed him that the plaintiff had purchased it from her; that the purchase money had been sent to her; and that he was looking for the deed back from her. The defendant Stembridge then indicated that he wanted the land and stated that he would pay the plaintiff a profit for it. The defendant Stembridge on October 17, 1955, also stated to the plaintiff that he wanted the Felton land and would pay him a profit for it, and the plaintiff then stated to him that he would be glad to discuss the matter with him later. The defendant Felton on October 18, 1955, wrote T. P. Smith that she would not convey the land to the plaintiff. In the letter she said: "I was forced to accept a better offer." On October 20, 1955, T. P. Smith telephoned the defendant Felton that the plaintiff would expect her to comply with her contract to convey the land to him, and she replied by saying that she had been informed that, if she had not executed the deed to the plaintiff, she would not be required to carry out her contract with him. On October 22, 1955, the defendant Stembridge presented for recordation to T. P. Smith, Clerk of the Superior Court of Crawford County, a warranty deed to himself from the defendant Felton, embracing the land in question, and it was then recorded. This deed was executed on October 20, 1955, and recited a consideration of $2,400. The recorded deed of Oc-

tober 20, 1955, to the defendant Stembridge is a cloud on the plaintiff's title. The defendant Stembridge is preparing to take actual possession of the land and to cut and remove the timber from it. Besides for process, rule nisi, and service, there are prayers that legal title to the land involved be decreed to be in the plaintiff; that the defendant Stembridge be required to produce in court and deliver up the deed he obtained from the defendant Felton, and that it and the record thereof be canceled; that the defendant Stembridge be enjoined from taking actual possession of the land involved and from cutting any of the timber on it; and that the plaintiff be granted general relief.

The defendants separately demurred to the amended petition on the ground that it stated no cause of action for any of the relief sought. They also filed separate answers, which were later amended, in substance averring: The defendant Felton wrote the defendant Stembridge on October 3, 1955, that she wanted to sell her land in Crawford County and that she would take $1,900 cash for it. On October 6, 1955, the defendant Stembridge wired her as follows: "Will send check for $1,900 with deeds in few days. Thanks." On October 11, 1955, the defendant Stembridge mailed the defendant Felton his check for $1,900 together with a deed to the land in question for execution by her. After some delay she returned the check and the unexecuted deed to his attorney. On October 16, 1955, the defendant Stembridge wired the defendant Felton an offer of $2,400 for his land. She accepted his offer by wire and on October 17, 1955, he wired her the amount of his offer. She accepted the $2,400 and executed and forwarded him a deed to the land on October 20, 1955. The plaintiff demurred to and moved to strike the amended answers on the ground that they set forth no issuable defense to his action. By one judgment the court overruled the defendants' demurrers to the amended petition and sustained the plaintiff's demurrers to the amended answers and struck them. The defendants assign error on both rulings. *Held:*

1. A contract to sell land can be made through the mails by correspondence. *Robinson* v. *Weller*, 81 *Ga.* 704 (8 S. E. 447). The defendant Felton's letter of October 3, 1955, to T. P. Smith meant that a cash payment of $1,900 for her land in Crawford County was to be made to her in Detroit, Michigan,

and her offer to sell, as so made, was therefore not accepted by the plaintiff. *Arnett* v. *Tuller,* 134 *Ga.* 609 (68 S. E. 330). But by T. P. Smith's letter of October 8, 1955, with its enclosures, the plaintiff made a counter offer to purchase the defendant Felton's land, and by the terms of the plaintiff's counter offer she was to execute the enclosed deed, deposit the check for $1,900, and forward to the plaintiff or his agent the executed deed as soon as the check was paid by the bank on which it was drawn, and her letter of October 12, 1955, in which she stated that she had deposited the check for $1,900 and would send the deed as soon as the check cleared was an unqualified and unconditional acceptance of the plaintiff's counter offer as made. Hence, the allegations of the amended petition are amply sufficient to show that the defendant Felton accepted the plaintiff's counter offer to purchase her land, and consequently she bound herself by written contract to deliver to him a deed conveying the land as soon as his check for $1,900 cleared through the banks.

2. In this State where there is a valid written contract for the purchase and sale of land, payment in full of the purchase price gives to the buyer a perfect equity, which is good title even at law, and is sufficient title to support or defeat an action of ejectment. *Pitts* v. *Bullard,* 3 *Ga.* 5 (46 Am. D. 405); *McLeod* v. *Bozeman,* 26 *Ga.* 177; *Adams* v. *Brooks,* 35 *Ga.* 63; *Fahn* v. *Bleckley,* 55 *Ga.* 81; *Thomas* v. *Walker,* 115 *Ga.* .11 (41 S. E. 269); *May* v. *Sorrell,* 153 *Ga.* 47 (111 S. E. 810); *Sikes* v. *Seckinger,* 164 *Ga.* 96 (137 S. E. 833); *Peterson* v. *Lott,* 200 *Ga.* 390 (37 S. E. 2d 358). Judge Powell in his work on Actions for Land (Rev. ed.), p. 141, § 140, while dealing with transactions in which perfect equities have been declared to be the equivalent of legal title, says: "Take the case of *Pitts* v. *Bullard,* 3 *Ga.* 5. In that case there is a lengthy and most excellent discussion by Judge Lumpkin, asserting the proposition that under the Statute of Uses and the Statute of Frauds the holder of a bond for title who has paid the purchase money in full is clothed with a perfect equity amounting to legal title. A bond for title, being a contract of bargain and sale, though not of immediate conveyance, is a peculiarly apt instrument in writing for the purpose of declaring a trust or benefit in behalf of the vendee. Hence, whenever it is shown by parol or otherwise that this so-called

equity . . . has become perfect by reason of the payment of the purchase money, resulting in the vendor's holding the mere naked title unaccompanied by any further interest, an execution of the trust ensues and a transmission of the legal title, by operation of the statute, immediately takes place." And it was said by this court in *Adams* v. *Brooks*, 35 *Ga.* 63 (2) supra: "Bond for titles, with all of the purchase money paid, is a complete title to land; and the vendor has no property in that land, remaining in him, whereon to grant administration after his death." The allegations of the instant amended petition show that the plaintiff has, pursuant to a written contract of purchase and sale, paid the defendant Felton the full agreed purchase price for the land involved; and that, in consequence of such payment, he has a perfect equity amounting to legal title for the land in question, and proof of those allegations would be sufficient to authorize a court of equity to decree legal title for the land to be in the plaintiff.

3. Code § 37-115 declares: "He who takes with notice of an equity takes subject to that equity." And in *Waller* v. *Dunn*, 151 *Ga.* 181 (3) (106 S. E. 93), it was said: "One who purchases land with notice of an outstanding equity in the property, held by a third person, takes subject to the right of such person to enforce it." For like rulings, see *Stone* v. *Georgia Loan & Trust Co.*, 107 *Ga.* 524 (33 S. E. 861), and *Finney* v. *Blalock*, 206 *Ga.* 655 (58 S. E. 2d 429), where it was held that, if one with notice that another has a contract for the purchase of land cuts in, buys it, and takes a conveyance, such person stands in the place of his vendor. Here, the amended petition clearly shows that the defendant Stembridge purchased the land involved from the defendant Felton with actual notice and knowledge of the fact that she had sold it to the plaintiff and had received from him full payment of the purchase price. On proof of this, a court of equity would be fully authorized to cancel his deed as a cloud on the plaintiff's title. *Sikes* v. *Seckinger*, 164 *Ga.* 96, supra.

4. A court of equity will, on petition therefor by the owner of land, enjoin one without title from taking actual possession of it and cutting and removing timber therefrom.

5. Where, as here, general demurrers to an amended petition are overruled, and the defendants bring the case to this court by

232

bill of exceptions in which error is assigned on such rulings, they cannot also properly assign error on judgments striking their separate answers; and this is true although the decision overruling the general demurrers, and that striking their answers, are embraced in the same judgment. *Armor* v. *Stubbs,* 150 *Ga.* 520 (104 S. E. 500); *McCallum* v. *Bryant,* 212 *Ga.* 348 (4) (92 S. E. 2d 531).

6. Since the amended petition stated a cause of action for the relief sought, there is no merit in the contention that the court erred in overruling the defendants' general demurrers.

*Judgment affirmed. All the Justices concur.*

Argued April 8, 1957—Decided May 13, 1957.

*Anderson, Anderson, Walker & Reichert, Chas. W. Walker,* for plaintiffs in error.

*W. J. Wallace, John B. Harris, Jr.,* contra.