[Civ. No. 10890.   Third Dist.   Jan. 4, 1965.]

RALPH L. SMITH et al., Plaintiffs and Respondents, v. LOREN HOLMWOOD, Defendant and Appellant.

Bowers & Sinclair and F. L. Sinclair for Defendant and Appellant.

Richard E. Saulque for Plaintiffs and Respondents.

VAN DYKE, J.*—This is an appeal by defendant from a judgment in favor of plaintiffs granting specific performance of a contract to buy and sell real property situated in Placer County in the Lake Tahoe area. We have concluded that as contended by appellant no contract was made between the parties for the sale of the subject property and that the judgment appealed from must be reversed.

Holmwood, the defendant and appellant, owned 800 acres of land in the region of Lake Tahoe. He dealt with a real estate broker, one White, who in turn dealt with plaintiffs and respondents concerning the sale and purchase of the property. The dealings between the parties took the following form: Respondents gave to White for transmission to appellant a document dated November 16, 1958, entitled, "This Is An Offer" and signed by two of respondents as offerors. In material part the document read as follows: "The undersigned RALPH L. SMITH, GLENN H. MILLAGE and NELLO MALERBI, HEREBY OFFER TO PURCHASE FROM LOREN HOLMWOOD, on the following terms and conditions, the property [description].

"1. The purchase price shall be the sum of $250,000.00.

"2. The purchase price shall be paid as follows:

"a. $1,000.00 cash to be paid upon the acceptance of the within offer. Said acceptance to be in writing by Loren Holmwood the owner.

"b. $4,000.00 cash to be paid to the owner within 30 days after the date of the acceptance of the within offer in writing by the owner.

"c. $25,000.00 cash to be paid to the owner on or before May 31, 1959.

"d. The balance of the purchase price shall be paid according to the terms of the promissory note to be executed

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

by the offerors, a copy of which is attached to this offer and made a part hereof; said note to be secured by a deed of trust to be executed by the offerors, a copy of which is attached hereto and made a part hereof for all purposes.''

The document contained many other provisions unnecessary here to relate.

White presented this offer to appellant on November 17. It was not accepted by him, although in almost all respects it was satisfactory. However, the written offer contained a provision that out of the 800 acres appellant reserved the right to select and have conveyed to him without consideration a parcel of two acres located in a certain area described in the offer. This was unsatisfactory to appellant because of the limited location. Appellant signed and delivered to White for communication to respondents a document reading as follows:

''Regarding offer from RALPH L. SMITH, GLENN H. MILLAGE and NELLO MALERBI to LOREN HOLMWOOD, dated Nov. 16, 1958 and relative to 800 acres of land in Placer County, Calif., which is attached hereto and made a part hereof:

''THE UNDERSIGNED LOREN HOLMWOOD accepts the said offer subject to the following change:

''Relative to item 6 of said offer. The seller reserves the right to select the two acres described in said item 6 at any place in the said section 23 except within 200 feet of the big spring.

''Other items of the original offer are acceptable.

/s/ Loren Holmwood''

This document contained in the left lower part the word ''Accepted,'' below which appeared three signature lines— the names of the respondents being typed below the signature lines.

White transmitted the document signed by appellant to the respondents who signed it and gave it to White for transmission to appellant with a letter reading as follows:

''November 19, 1958.

''Ed. White,
2616 J St.,
Sacramento, Calif.

Dear Sir:

This is to advise you that the offer dated Nov. 16, 1958, and your (representing Mr. Loren Holmwood) counter offer of Nov. 17, 1958, covering 800 acres more or less in

Placer County, Calif., owned by Mr. Loren Holmwood, from Ralph Smith, Glenn Millage and Nello Malerbi has been accepted.

Copies of properly signed documents will be forwarded to you under separate cover.''

White then wrote to appellant telling him that ''Regarding offer of Ralph Smith, Glenn Millage and Nello Malerbi dated November 16, 1958 and your counter of November 17, 1958,
. . . .

''I am pleased to inform you that I have been advised, in writing, . . . that your conditional acceptance of the original offer has been accepted by the offerors.''

In the meantime appellant had consulted an attorney who on November 22, 1958, mailed to respondents a letter telling them that appellant had ''rescinded'' any contract that existed by reason of fraud in the procurement of the same. On December 12, 1958, the sum of $5,000 was tendered by respondents to appellant who refused the tender. Prior to that no money had been paid or tendered by respondents to appellant.

The parties are in agreement, and we think necessarily so, that the question of contract or none depends upon what was done prior to the letter from appellant's attorney to respondents. The trial court decided that the contract had arisen, notwithstanding no money had been paid, and decreed specific performance. We think this was error.

Respondents' offer to purchase was rejected by appellant when he offered to sell on different terms, the difference being his refusal to sell without modifying the provisions concerning the reserved two acres contained in the respondents' offer. ■ It is familiar law that an offer to sell must be accepted precisely as made and that any qualifications insisted upon by the offeree amounts to a rejection of the offer and in a proper case the making of a counteroffer. The parties are agreed that appellant did refuse respondents' offer and did make a counteroffer of his own. Appellant claims this counteroffer was never accepted. Respondents claim that it was and the court so found. Appellant contends that in order to accept his counteroffer respondents had to pay the $1,000 as a material part of that acceptance. Respondents contend that the payment of the $1,000 was not necessary to acceptance but was merely a first payment of a purchase price agreed upon in the contract which was completed and went into effect when they, through White, notified appellant that they were ac-

cepting, or had accepted, his counteroffer. ■ If the prescribed mode of acceptance of an offer to sell property requires the payment of a sum of money, the offer is not accepted unless the money be paid or tendered, and a simple notice of acceptance, however executed, unaccompanied by the payment of the prescribed sum amounts to no more than a counteroffer and does not give rise to a contract unless this counteroffer is in turn accepted by the first offeror. (*Conley* v. *Fate,* 227 Cal.App.2d 418 [38 Cal.Rptr. 680]; *Callisch* v. *Farnham,* 83 Cal.App.2d 427 [188 P.2d 775]; *Bowles* v. *Fickas,* 140 Tex. 312 [167 S.W.2d 741]; *Post* v. *Gillespie* (1959) 219 Md. 378 [149 A.2d 391]; *Stembridge* v. *Smith* (1957) 213 Ga. 227 [98 S.E.2d 609]; *Ruble* v. *Ruble* (1951) 234 Minn. 15 [47 N.W.2d 420].)

■ On the rule that acceptance must in every respect correspond with the offer before a contract results see generally 17 Corpus Juris Secundum, Contracts, section 42, page 674; 12 California Jurisprudence 2d, Contracts, section 21, page 211; 1 Restatement of the Law of Contracts (1932 ed.) section 59, page 65; 1 Williston on Contracts (3d ed.) section 73, page 238. From Williston we quote the following: "In order to make a bargain it is necessary that the acceptor shall give in return for the offeror's promise exactly the consideration which the offeror requests. If an act is requested, that very act and no other must be given."

■ The documents interchanged between the parties when read in connection with the acts hereinbefore described accomplished the following: Respondents offered to buy the property upon terms which required them to pay $1,000 cash to appellant "upon the acceptance" in writing of their offer. This offer appellant rejected and it no longer stood as an offer. Appellant then offered to sell, adopting, save for the modification he made, all the terms of respondents' previous offer. Thus he required on his part a written acceptance of his offer concurrently with the payment of $1,000 cash. The payment of this sum was an act "requested" and "that very act and no other" had to be given; otherwise no contract arose. There is no dispute concerning the facts insofar as material to the discussion here. The money was never paid nor even tendered until after the appellant's offer was revoked.

The judgment appealed from is reversed with directions to enter judgment for defendant.

Friedman, J., concurred.

PIERCE, P. J.—I dissent. I would reverse the judgment with directions for a new trial. I agree, and it is elementary, that a binding bilateral contract exists only where there has been an offer and a communicated acceptance: and where the offer requires that a notification of an acceptance be accompanied by an act (e.g., payment of a sum of money) no contract comes into being unless and until both the notification and the act have been accomplished. On the other hand, *if the parties so decide,* no policy of the law prevents their agreement that a binding contract shall occur upon the communication of the acceptance of the offer and without payment of the first installment of the purchase price even though it be agreed that such payment is to follow promptly—as a contractual obligation of the buyer immediately after the communicated acceptance. Whether the case falls into the one category or the other depends upon the intent of the parties.

That was the question presented to the trial court and which is presented to us—what did the parties intend here?

In the answer of that question the rules by which courts are bound are these: If the agreement is in writing and the terms of the written instrument are clear, the parole evidence rule requires that the search for intent shall begin and end by giving effect to this language. If it is unclear, then resort may be had to parole evidence not to vary the terms of the instrument but to ascertain what the parties meant by what they said under the various guide rules prescribed for the interpretation of ambiguous writings. This is also Hornbook law.

Inquiry in this case centers upon the interpretation of the sentence: "The purchase price shall be paid as follows: a. $1,000.00 cash to be paid *upon the acceptance* of the within offer. Said acceptance to be in writing by Loren Holmwood the owner." (Italics supplied.) And in these sentences I would emphasize the word "upon."

Depending upon context the word "upon" when denoting time can mean either "before," "after," or "simultaneously with" the fact to which it relates. (67 C.J.S. 495, and cases cited.)

The majority opinion finds that as used here the meaning of the language used was too clear to admit interpretation. Had this statement been made *in a seller's offer to a buyer,* I would agree; and the cases cited in the majority opinion so hold either expressly or by inference. But here the statement

quoted was not made originally in a seller's offer to a buyer. It was a proposal being made by buyers to a seller who was located at a place some distance away and since the offer was not accompanied by a payment of a thousand dollars as earnest money it was made with the knowledge that some period of time must elapse after the communicated acceptance of the offer before the thousand dollars payment could be made.

From this fact I draw the conclusion that, whatever the ultimate intent of the parties may have been, it was not the buyers' original intent that a binding contract would occur only when they, after the seller's notification of acceptance, delivered the thousand dollars to the seller. So to construe their intent would be to give them complete control over the inception of the contract. Under such a construction the buyers would have merely been taking a revocable option until the contract was brought into being by their sending a thousand dollars to the seller. That, to me, was clearly NOT their intent.

Reasonably construed, the buyers' offer obviously intended a binding contract as soon as the seller communicated his acceptance of the proposed terms with payment of a thousand dollars by the buyers to follow promptly thereafter as their obligation under the contract.

Did the asserted "conditional acceptance" of the buyers' offer (legally a counteroffer) incorporating by reference the buyers' expression of terms change this intent? Possibly, but, as I see it, not so clearly and unambiguously that resort may not be had to parole evidence to determine what the parties really intended.

There are factors present here which permit reasonable inference that when the seller replied to the offer he did not regard payment of the thousand dollars as the *sine qua non* of the contract's birth. In his letter of "conditional acceptance" the seller seems preoccupied with a new condition being imposed—the location of the 2 acres to be reserved. In fact, importance of the thousand dollars was not apparent in the seller's mind even *after* the buyers' acceptance of the counteroffer. Having received such acceptance, he consulted his attorney and it seems clear that both the seller and his attorney then considered that a contract existed because the latter, at the seller's instance, then wrote the buyers "rescinding" the contract—upon the ground of "fraud."

In summary, I consider the meaning of the word "upon" by a buyer in the context of this written instrument and its

incorporation by reference in the seller's counteroffer sufficiently unclear to permit a trial court to receive parole evidence to determine the true intent of the parties. And I think that the case should be reversed for a new trial to permit determination of the parties' intent.

The case should be reversed and retried because in my opinion prejudicial error occurred when the trial court rejected the seller's proffered evidence that the purchase price, $250,000, was grossly lower than the market value of the property. Objections to questions on this point were interposed upon the ground that the seller by making a counteroffer was effectually estopped to urge inadequacy of consideration. Statements by the court appear to accept this contention, and although some of this evidence was received, it was later stricken on plaintiffs' motion.

The ruling was error because specific performance will not be decreed where the consideration to be paid is inadequate (Civ. Code, § 3391, subd. 1; 2 Rest., Contracts, § 367) or where the contract is unjust or unreasonable (Civ. Code, § 3391, subd. 2.) (And see 4 Witkin, Summary of Cal. Law (1960) Equity, §§ 28, 29, pp. 2810, 2811.) The circumstances under which this contract was negotiated, and the happenstance that the price originally fixed by the buyers was incorporated by reference into a counteroffer, does not affect the operation of this principle.

In my opinion the judgment should be reversed and the cause remanded for a new trial.

A petition for a rehearing was denied January 27, 1965. Pierce, P. J., was of the opinion that the petition should be granted.