R. M. PETTY and ALLENE A. PETTY, ET AL., 1 Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Petty v. CommissionerDocket Nos. 7311-78, 7312-78, 7313-78, 7314-78, 7315-78.United States Tax CourtT.C. Memo 1981-285; 1981 Tax Ct. Memo LEXIS 457; 42 T.C.M. (CCH) 56; T.C.M. (RIA) 81285; June 11, 1981*457 Glenn H. Strother, for the petitioners. Eric Chofnas and Jay A. Sekulow, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: In these consolidated cases respondent determined deficiencies for the years and in the amounts as follows: DeficienciesinPetitionersYearIncome TaxR. M. Petty and1971$ 4,688.74Allene A. Petty1972306.87197310,437.40Ray P. Adamson19714,825.3319722 282.00197316,121.951974225.301975366.44Augustus E. Adamson and19716,573.05Bernice B. Adamson1972446.34197317,409.411974378.63Estate of Edward S. Ragsdale,19716,350.67Deceased, and Wynette A.1972687.45Ragsdale, Surviving Wife197319,438.631974551.411975517.31L. M. Adamson, Jr., Trust,1972887.02A. E. Adamson & Wynette A.1973185.67Ragsdale, Trustees19743 2,429.37Sandra L. Adamson1975221.001976412.03Lee A. Adamson1975220.001976488.00Some of the issues raised by the pleadings have been disposed of by agreement of the *458 parties, leaving for our decision: (1) whether petitioners are taxable on a portion of the gain on the sale in 1971 of real property; (2) whether the assessment and collection of the deficiencies for the taxable year 1971 are barred by the Statute of Limitations; (3) whether petitioners are taxable on the ordinary income produced from the real property including interest from the investment of the cash received from the sale of a part of the real property in 1971; (4) whether petitioners R.M. and Allene Petty, docket no. 7311-78, are entitled to a deduction in 1973 for legal expenses of $ 3,609.25; (5) whether the income of petitioner L. M. Adamson, Jr., Trust, docket no. 7315-78, for the taxable years ending January 31, 1972, January 31, 1973, and January 31, 1974, is taxable to it or its beneficiaries; and (6) whether petitioners Sandra L. Adamson and Lee A. Adamson, docket no. 7315-78, derived short-term capital gain in the taxable years 1975 and 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of the filing of their petitions in this case, petitioners Edward S. Ragsdale (now deceased), Wynette A. Ragsdale (surviving spouse *459 and one of the trustees of the L. M. Adamson, Jr., Trust), Lee A. Adamson, and Sandra L. Adamson were residents of Atlanta, Georgia; petitioners R.M. and Allene A. Petty were residents of Riverdale, Georgia; petitioner Ray P. Adamson was a resident of Rex, Georgia; and petitioners Augusts E. and Bernice B. Adamson were residents of St. Louis, Missouri. R.M. and Allene Petty filed joint Federal income tax returns for each of the calendar years 1971, 1972, and 1973 with the Internal Revenue Service Center, Chamblee, Georgia. Ray P. Adamson filed individual Federal income tax returns for each of the calendar years 1971, 1972, 1973, 1974, and 1975 with the Internal Revenue Service Center, Chamblee, Georgia. Augustus and Bernice B. Adamson filed joint Federal income tax returns for each of the calendar years 1971, 1972, 1973, and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. Edward and Wynette Ragsdale filed joint Federal income tax returns for each of the calendar years 1971, 1972, 1973, 1974, and 1975 with the Internal Revenue Service Center, Chambles, Georgia. The returns of each of these petitioners for the taxable year 1971 were filed on or before April *460 15, 1972. A. E. Adamson and Wynette Ragsdale as trustees for the L. M. Adamson, Jr., Trust (the trust) filed Fiduciary income tax returns for each of its fiscal years 1973 and 1974 with the Internal Revenue Service Center, Chamblee, Georgia. A return was not timely filed for the trust for its fiscal year 1972. However, a substitute for the return was prepared by the delegates of the Secretary of the Treasury under section 6020(b), I.R.C. 1954, 4 for this taxable year. Lee Adamson filed individual Federal income tax returns for the calendar years 1975 and 1976 with the Internal Revenue Service Center, Chamblee Georgia. Sandra Adamson filed individual Federal income tax returns for the calendar years 1975 and 1976 with the Internal Revenue Service Center, Chamblee, Georgia. L. M. Adamson, Sr., was a farmer and he lived in Rex, Georgia. Mr. Adamson died intestate on March 23, 1942, and he was survived by his wife, Geneva P. Adamson, and nine children, A. E. Adamson, Allene Adamson Petty, Ray P. Adamson, Wynette Adamson Ragsdale, L. M. Adamson, *461 Jr., Annie Adamson James, L. L. Adamson, Bertice Adamson Bryan, and Faye Adamson Dalick (the heirs). At the time of his death, Mr. Adamson resided in Clayton County, Georgia. On the date of his death he owned approximately 721.19 acres of land (the land) and had no debts. Under the laws of intestacy of the State of Georgia, Mr. Adamson's wife inherited an undivided one-fifth interest in the land and each of his nine children inherited an unidivided four forty-fifths interest in the land. In 1951, Faye Adamson Dalick died, survived by her husband, John Dalick, and her daughter, Marilyn Dalick. Upon her death, each of her heirs received an undivided two forty-fifths interest in her father's land. On August 30, 1967, Geneva P. Adamson, died intestate. According to the laws of intestacy of the State of Georgia, her one-fifth interest in the land which had been owned by her husband passed equally to her eight living children and one granddaughter, leaving each child with an undivided one-ninth interest and the granddaughter, Marilyn Dalick, with an undivided three forty-fifths interest in the land. At the date of her death, Mrs. Adamson's only assets consisted of her one-fifth interest *462 in her husband's land and a small amount of cash which was spent for funeral expenses. There were no debts listed on her estate tax return. On January 12, 1969, L. M. Adamson, Jr., died. The terms of his will established a trust for his two daughters, Sandra Adamson and Lee Adamson. The trust received his one-ninth interest in the land. After the death of L. M. Adamson, Jr., the owners of the land and their interests were as follows: Relationship toNameL. M. Adamson, Sr.InterestA. E. AdamsonSon5/45Wynette Adamson RagsdaleDaughter5/45Annie Adamson JamesDaughter5/45Allene Adamson PettyDaughter5/45Bertice Adamson BryanDaughter5/45L. L. AdamsonSon5/45Ray P. AdamsonSon5/45Marilyn DalickGranddaughter3/45John DalickSon-in-law2/45L. M. Adamson, Jr.,Trust forTrustGranddaughters5/45 The heirs were unable to agree among themselves upon a division of the land. Although they could have petitioned a court to divide the land among them in any manner selected by it, they decided that some of the land should be sold in order to distribute the proceeds of the sale. They selected the vehicle of administration in order to effect a division of the property. On August 1, 1969, the heirs petitioned *463 the Probate Court of Clayton County for permanent letters of administration. Mrs. Wynette Adamson Ragsdale and A. E. Adamson were appointed as co-administrators (administrators) of the estate. The administrators hold title to the land for the benefit of the heirs for the purposes of completing a sale of the property and they are the only ones to sign the deeds over to the purchasers. The administrators of the estate of Mr. Adamson obtained an order from the Clayton Court of Ordinary on September 8, 1970, granting them leave to sell a portion of the land. Pursuant to this order, the estate sold 462.98 acres of land (tract I) to R. W. Nelson (purchaser) on April 6, 1971, at a public administrator's sale. The total sale price was $ 1,141,245.70. The terms of the sale established by the order of the Probate Court were as follows: 29 percent of the sale price was to be paid in cash and the balance by a note payable in five equal annual installements of principal plus accrued interest at the rate of 7 percent, the note to be secured by a purchase money deed. There were no prepayment privileges during the balance of the calendar year 1971, but prepayment was allowed thereafter without *464 penalty upon payment of the accrued interest to the date of prepayment. In return for meeting the terms of sale, the purchaser was to be entitled to a release of 20 percent of the total acreage at the time of the downpayment, such acreage to be selected by the purchaser. The balance of the acreage was to be released on the basis of payment of 110 percent of the per acre price paid for the property with provisions for the release of the contiguous road frontage in proportion to the number of acres released. The estate received $ 2,500 as a downpayment in April 1971. The balance of the downpayment (plus intagible tax of $ 2,431.50) in the amount of $ 330,892.75 was paid by the purchaser at the closing of the sale on July 20, 1971. The administrator's deed which conveyed title to tract I do Mr. Nelson was executed on July 20, 1971, and was recorded in Clayton County, Georgia, on July 22, 1971. Mr. Nelson executed a promissory note in the amount of $ 810,284.45 in favor of the administrators on July 20, 1971. A security deed on the property was executed on July 20, 1971, to secure the balance due and this deed was recorded in Clayton County on July 22, 1971. Upon the receipt of the *465 downpayment, the estate released approximately 20 percent of the acreage to the purchaser. Prior to the actual closing of the administrator's sale in July, the purchaser had made arrangements to re-sell approximately 94 acres and the proceeds from this sale were used to fund the downpayment of 29 percent to the estate. This sale was also completed on July 20, 1971. After the completion of the sale of tract I, the heirs realized that the 94 acres of land that was released to Mr. Nelson and immediately sold by him represented the most valuable land in tract I. This left the heirs in a poor security position with respect to the money owed by Mr. Nelson because the 94 acres were not subject to the security agreement and the balance of the land subject to the security agreement between the parties was worth far less than the amount of the note. While the heirs were considering what action, if any, to take, the 29 percent cash downpayment remained in the administrators' checking account from July 22, 1971, until September 17, 1971, at which time the administrators purchased savings certificates in the amount of $ 317,500 at the C & S Bank. In November 1971 the administrators concluded *466 that there were certain terms of the sale which were detrimental to the estate and attempted to correct these terms by negotiation. These efforts proved unsuccessful and the administrators, on the advice of their attorney, decided to litigate the validity of the sale. On March 17, 1972, a complaint in the form of an action for declaratory judgment was filed by the administrators in the Superior Court of Clayton County in an effort to determine the validity or invalidity of the sale of tract I. This lawsuit was instituted in an attempt to validate the sale because the attorney for the administrators advised them that the terms of the sale were so ambiguous that they might be unenforceable. While the case was pending, the 29 percent downpayment was not paid into the registry of the court but was invested by the administrators in savings certificates and from the date of the complaint until the final determination of the case in 1973, an order of the Probate Court would have been required to distribute any of this money to the heirs. In fact, none of the money was distributed during this time. Although the lawsuit was directed at determining the validity of the sale of tract I, the *467 sale of the 94 acres by Mr. Nelson on the same day as his purchase from the estate was not stayed by the court. The Superior Court upheld the validity of the sale of tract I on June 3, 1972. The decision was appealed by the administrators to the Court of Appeals and Supreme Court of the State of Georgia. On January 23, 1973, the Supreme Court affirmed the lower court's decision in Adamson v. Petty, 230 Ga. 87, 195 S.E.2d 436 (1973). On April 26, 1973, the balance of the purchase price in the amount of $ 909,544.30 was paid by Mr. Nelson to the estate. The $ 909,544.30 included $ 99,259.73 which represented interest paid under protest and Mr. Nelson filed suit against the administrators on April 27, 1973, seeking to recover interest and damages due to the administrator's failure to comply with the terms of the sale in 1971. The suit was settled in January 1975 by the repayment by the administrators of $ 30,000 of interest to Mr. Nelson. On September 14, 1973, the administrators filed a petition with the Probate Court of Clayton County to obtain approval of the sale of the remaining land in the estate. The sale was approved by an order of the court dated November 5, 1973. The *468 terms of sale stated in the order were that the sale was to be conducted at public auction with each sale being an installment sale with a payment of 29 percent cash and the balance evidenced by a secured promissory note bearing interest at 8 percent per annum with no prepayment prior to August 30, 1974. The land was to be released to the purchaser at the discretion of the administrators. Subsequent to this order and prior to the actual sale, the heirs attempted to agree on a distribution of the property among themselves. Although several proposals were drafted, no agreement could be reached. The administrators offered for sale the remaining lands in the estate (tracts II through VI) at public auction on February 6, 1974. The only successful bidders at this sale were heirs Wynette Ragsdale, Allene Petty, Ray Adamson, Augustus Adamson, and the trust. The amount of land and successful bid for each tract was as follows: TractAcresBidII63.32$ 221,270.00III50.81259,131.00IV27.03118,256.00V40.71166,911.00VI76.34448,498.00Administrator's deeds were drawn up for each tract of land on February 6, 1974, indicating that the consideration for each transfer of property was a distribution to *469 the heirs in kind from the estate. 5L. A. Adamson, Betty Dalick, William I. and Anne E. James, Charles E. and Marilyn F. Noad and Judson H. and Bertice Bryan filed suit in the Superior Court of Clayton County seeking to have the deeds reformed to show that the land was purchased as an installment sale as required under the Probate Court order of November 5, 1973. The Superior Court ruled that the deeds should be reformed to state that installment sales had occurred and that the consideration for the purchase was not a distribution in kind from the estate. This decision was upheld by the Supreme Court of the State of Georgia in Adamson v. James, 233 Ga. 130, 210 S.E.2d 686 (1974). The deeds to tracts II through VI were subsequently reformed to state that each transfer was an installment sale at a price equal *470 to the amount bid for the property. At the time each deed was reformed, deeds to secure debt were given by the successful bidders as security for the purchase price of each tract. Each were subsequently satisfied by crediting the distributive share of each purchasing heir against the debt owed by such heir to the administrators. The administrators of the estate of Mr. Adamson had Form 1041 fiduciary income tax returns prepared by Luther S. Fouts, Jr., based on a fiscal year ending July 31 for the years 1971, 1972, 1973, 1974, and 1975. Two amended returns were prepared for the fiscal year ending in 1973. Attached to the second amended return signed by the administrators on December 27, 1974, was a schedule listing the capital gain distributions pertaining to the sale of tract I which read as follows: Capital Gain Distribution7-31-717-31-737-31-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%41%20%10%A. E. Adamson775.551,096.46534.86267.43W. A. Ragsdale775.551,096.46534.86267.43Ray P. Adamson775.551,096.46534.86267.43Allene A. Petty28,341.7140,069.3219,546.009,773.00Lamar Adamson61,277.0786,562.4242,225.5721,112.79Annie A. James61,277.0786,562.4242,225.5721,112.79Bertyce A. Bryan61,227.0786,562.4242,225.5721,112.79Dalick 1/2 Heirs61,227.0786,562.4242,225.5721,112.79275,576.64389,608.38190,052.8695,026.45The *471 29% down payment was received in July 1971; however, a lawsuit was filed questioning the legality of the sale. These proceeds could not be distributed. The litigation was terminated in 1973 and the balance of the contract was paid to the estate under legal protest. This litigation is still pending. The Co-administrators have determined that the 29% received in 1971 was and is distributed under the throwback rule. By reason of the lawsuit for damages, etc. it was determined that 41% of the total was distributable in F/Y 73 with the balance considered still under protest. It was deemed safe to release 20% in F/Y with the remaining 10% necessarily held pending disposition of the lawsuit. The disproportionate allocation of gain was made by Mr. Fouts based on the fact that some heirs received land and some heirs received cash. The four heirs who were allocated the most gain on the Form 1041 fiduciary income tax return received cash from the administrators and petitioner Petty received part cash and part land. The remaining petitioners, Adamson, Ragsdale, and Adamson, who received mostly land, were allocated a smaller amount of gain and no gain was allocated to the trust. The administration*472 of the estate was terminated and the books were closed as of November 30, 1975. Each heir received an equal share of one-ninth of the estate, which share was equalized in the amount of $ 250,616.27 in money or in land as reflected in the final accountings filed by the estate. None of petitioners in this case reported any income from the sale of tract I in 1971 or in 1973, and in 1974 reported only the amount of gain allocated to them on the amended Form 1041 fiduciary income tax return for the fiscal year 1973. None of petitioners reported ordinary income derived from the land including interest on the certificate of deposit purchased with funds paid for tract I in 1971. Respondent on April 6, 1978, mailed a notice of deficiency to each of petitioners in which he explained that their taxable income was adjusted for their one-ninth share of the ordinary net income for the taxable years in issue from the property inherited from Mr. and Mrs. L. M. Adamson, Sr., and interest on the certificate of deposit bought by the administrators. 6 Respondent also determined that each heir realized a long-term capital gain in 1971 and 1973 from the installment sale of each heir's one-ninth interest *473 in tract I of the property acquired from the estates of Mr. and Mrs. L. M. Adamson, Sr. Respondent further determined that there was an omission of income in 1971 by each petitioner in excess of 25 percent of the income reported, so that the applicable statute of limitation was 6 years. Respondent also disallowed a claimed deduction for legal fees to R.M. and Allene Petty in their taxable year 1973. OPINION Petitioners contend they had no income in 1971 from the sale of tract I. They base this contention on the facts that (1) they questioned the validity of the sale of tract I and filed suit against the purchaser on March 17, 1972, and (2) because of the litigation they placed the 29 percent cash downpayment in certificates of deposit in a bank, which money could only be obtained by the heirs through an order of the Probate Court. 7*475 *476 Respondent argues that a part of the gain must be recognized in 1971, the year in which the 29 percent downpayment *474 was received, and the balance recognized in 1973. He also contends that each of the heirs is taxable on his or her prorata part of the gain from the sale of tract I. Based on the manner in which petitioners filed their Federal income tax returns for the years in issue, it is clear that they are all on the cash basis method of accounting. Under that method of accounting, an item is included in gross income in the taxable year in which it is actually or constructively received. Section 451(a); section 1.451-1(a), Income Tax Regs. In the instant case, petitioners elected to report the income from the sale of the land under the installment method pursuant to section 453. Therefore, petitioners are not required to recognize the entire gain on the sale of the land in 1971 but rather only the proportion of the installment payments actually received which the gross profit realized on the sale bears to the total contract price. Sections 453(a)(1) and (b)(1). Tract I was sold to R. W. Nelson for a total price of $ 1,141,245.70. The *477 property was conveyed to Mr. Nelson in an administrator's deed dated July 20, 1971, which deed was signed by the administrators and witnessed by two other parties whose signatures appeared on the deed. This deed was recorded in Clayton County, Georgia, on July 22, 1971. The deed to secure debt executed by Mr. Nelson in favor of the administrators in the amount of $ 810,284.45 was signed on July 20, 1971, and was recorded in Clayton County, Georgia, on July 22, 1971. The $ 330,961.25 difference between the sale price of the land and the amount of the note taken by the administrators was the amount due to them and paid to them on July 20, 1971, the date of the closing of the sale. Petitioners argue that they were not the legal owners of tract I when it was sold or that a completed sale of the land did not occur on July 20, 1971. In fact, the validity of the sale was upheld in Adamson v. Petty, 230 Ga. 87, 195 S.E.2d 436 (1973). See also Ga. Code Ann. secs. 113-901, 29-401, 29-418, and 29-418.1; Stembridge v. Smith, 213 Ga. 227, 98 S.E.2d 609 (1957). Furthermore, petitioners do not claim, and we do not so find in the documents admitted in evidence, any indication that there existed *478 any restrictions on the use or disposition of the cash received in 1971. Therefore, under petitioners' method of accounting and under the principle of annual accounting for tax purposes, the amount of gain required to be reported under the installment method must be included in income in 1971. See United States v. Lewis, 340 U.S. 590 (1951); Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931). On brief, petitioners state that they rely on "the claim-of-right doctrine." It is not clear whether this contention is in support of their position that no part of the gain on the sale of tract I is taxable to them in 1971 because of their lawsuit or in support of their contention that each heir is taxable only on the amount of cash proceeds ultimately received. However, it is clear that the claim-of-right doctrine is of no help to petitioners with respect to any position they take in this case. In North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932), the Supreme Court stated that-- If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that *479 he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * [286 U.S. at 424] See also United States v. Lewis, supra. Therefore, the claim-of-right doctrine provides that unless petitioners have received the cash downpayment under a restriction as to its use or disposition then the income is properly reportable in 1971. We have previously addressed the issue of whether a lawsuit filed after the receipt of the proceeds of sale will qualify as a restriction which will postpone the date of recognition. In Hope v. Commissioner, 55 T.C. 1020 (1971), affirmed 471 F.2d 738 (3rd Cir. 1973), the taxpayer sold the stock of his closely held corporation for $ 20 per share in 1960. Approximately five months after the sale, on December 21, 1960, the taxpayer instituted a suit for rescission of the sale because he realized that the purchase price was too low. The lawsuit was settled on March 24, 1961, and because of the pending litigation, the taxpayer argued that the gain should be recognized in 1961 rather than 1960. In holding that the proceeds from the sale were taxable in 1960, we stated at 1030 that "the petitioner's contingent *480 liability to pay back on amount equivalent to the proceeds received on the sale if his suit for rescission was successful imposed no restriction upon his use of the money in his hands." See also Commissioner v. Brooklyn Union Gas Co., 62 F.2d 505 (2d Cir. 1933), affirming 22 B.T.A. 507 (1931). In the instant case, petitioners received a cash downpayment of $ 330,961.25 pursuant to a written contract dated July 20, 1971, and recorded on July 22, 1971. At the time the money was received, there were no restrictions as to its use or disposition and, in fact, the lawsuit which petitioners contend delay recognition, was not filed until March 17, 1972. Therefore, it is clear that "the mere filing of the suit by the petitioner was not of itself sufficient to postpone the realization of gain on the completed sale." Hope v. Commissioner, supra at 1031. See also Commissioner v. Brooklyn Union Gas Co., supra.For the same reasons that we find no restrictions on the use of the money paid to the heirs in 1971, we find none on the portion of the sale price paid in 1973. Petitioners apparently argue that because the heirs could have made an initial division in kind of the land and then the ones *481 who wanted to keep the land retained their land and the ones who wanted money sold their land, each heir should be taxed as if this had been done. They contend that for this reason the heirs who ultimately received all cash should pay substantially all of the tax due on the sale of tract I and the heirs who kept land should not be liable for tax except with respect to the relatively small equalizing cash payments they ultimately received. However, the facts here show that when tract I was sold each heir owned an undivided interest therein. Therefore, each heir is taxable in his or her proportionate share of the gain on that sale regardless of how or when the funds were ultimately distributed to them personally or how or in what manner the distribution of the land remaining in the estate was finally effected. We uphold respondent in his method of taxing the capital gain from the sale of tract I to petitioners in 1971 and 1973. The second issue presented is whether the assessment and collection of deficiencies from petitioners for the taxable year 1971 is barred by the Statute of Limitations. The notice of deficiency was issued more than three years from the date of the filing *482 of the return. However, the parties agree that the six-year Statute of Limitations provided under section 6501(e)(1)(A) is applicable if we determined that petitioners must recognize the income from the sale of tract I in 1971. Because we have so held above, the assessment and collection of a deficiency for 1971 was not barred by the Statute of Limitations on April 6, 1978, when the deficiency notice was mailed. The third issue is whether petitioners are taxable on income from the land and interest from the investment of the proceeds from the sale of tract I. The parties agree that the items of ordinary income were correctly computed in the statutory notices of deficiency and that the only issues in dispute are which heirs are taxable on the ordinary income and the proper year in which the income is taxable. We have held that the lawsuit filed by petitioners did not delay recognition of the gain from the sale of tract I. We have also held that each heir is taxable on his or her share of the gain on this sale determined by his or her inherited interest in the total land. As petitioners have made no contention that the ordinary income should not be taxable to them as determined *483 by respondent except the same contentions made with respect to the taxability of the capital gain from the sale of tract I, we determine the issue for respondent. The final three issues are (1) whether petitioners Petty are entitled to a deduction for legal expenses in 1973; (2) whether the income of the L. M. Adamson, Jr. trust is taxable to the trust or its beneficiaries for its fiscal years ending in 1972, 1973, and 1974; and (3) whether petitioners Sandra and Lee Adamson derived short-term capital gain in 1975 and 1976. Petitioners have the burden of proving that respondent's determinations in his deficiency notices were incorrect. Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have introduced no evidence to show error in respondent's determination as to these three final issues. Accordingly, we hold for respondent because of petitioners' failure of proof. Although we decide all the issues before us for respondent, because of other issues which have been disposed of by agreement of the parties, Decision will be entered under Rule 155. Footnotes1. The following cases are consolidated herewith: Ray P. Adamson, docket No. 7312-78; Augustus E. Adamson and Bernice B. Adamson, docket No. 7313-78; Estate of Edward S. Ragsdale, Deceased, and Wynette A. Ragsdale, Surviving Wife, docket No. 7314-78; L. M. Adamson, Jr., Trust, A. E. Adamson and Wynette A. Ragsdale, Trustees, FBO Sandra L. Adamson and Lee A. Adamson, Docket no. 7315-78.↩2. Respondent determined a deficiency of $ 832.13. However, the parties agreed that this amount was in error and that the proper deficiency was $ 282. ↩3. The taxable years of the L. M. Adamson, Jr., Trust are taxable years ended January 31, 1972; January 31, 1973; and January 31, 1974.↩4. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩5. There is no issue in this case directly involving this sale. Counsel for respondent at the trial stated that respondent had treated this transactions as a purchase by the various petitioners in this case of the undivided interests of the other heirs in this property. In any event it does not affect this case and is material only to an understanding of petitioners' position.↩6. The parties are in agreement as to the amount of ordinary income from the land and interest on funds from the sale of tract I as computed by respondent. The only issue in this respect is whether this income is taxable to these petitioners.↩7. Petitioners in the argument in their brief state their position as follows: Petitioners have shown that the Estate was property formed under Georgia law and properly administered under Georgia law. Petitioners have shown that the accounting and tax reporting of the Estate was proper and accurate under the Internal Revenue Code. Petitioners have shown that the Estate had no items of taxable income to report or, distributable in 1971 and 1972, and relies strictly on the claim of right doctrine regarding the timeliness of the 1971 down payment, so called, in its provisional reporting shown on the 1971 fiduciary return. Petitioners have shown that the Estate's reporting of all items of income was timely and correct and in strict accord with the claim of right doctrine. Petitioners have shown that the Estate properly distributed all taxable income items to the heirs of the Estate in exact proportions to the items of corpus received by each heir and timely and accurately reported to Internal Revenue Service via fiduciary return. The evidence shows that all nine heirs of the Estate, including Petitioners, did specify, demand and receive the exact items of corpus, land and land proceeds as fully distributed to them and as accurately reported by the fiduciary returns filed with Internal Revenue Service. See the Estate distribution contained in the 1973 second amended form 1041 and as completed and recapped in the final return, Form 1041, filed in 1976. Petitioners show and maintain that the Estate's accountability and distribution of the taxability resulting from the administration was accurate and in complete accord with the Internal Revenue Code. In summary, the Respondent, in disregard for the facts, evidence and law, completely bungled the entire case here in attempting to assess the Petitioners for taxable income they did not earn or receive. The evidence herein shows that the taxable income in question was earned, paid over to and received by the four money heirs - not parties hereto - and not earned, paid over to or received by these Petitioners. The Petitioners have thus carried the burden of proof including proof of the negative - they did not receive the taxable income. Once the evidence showed that IRS's determination was arbitrary and unreasonable determination was invalid, therefore taxpayer is not liable for any additional tax merely because other parties desire another way of settlement of the case. See Helvering v. Taylor, (1935), 293, 265, 507, 79 L.Ed. 623, 55 SCT 287↩, 14 after 1194 PH Memo BTA.